416 So.2d 1291 (1982)
Mrs. Francois Maude DETRAZ et al.
v.
Anthony J. FONTANA, Jr. et al.
No. 81-C-3033.
Supreme Court of Louisiana.
July 2, 1982.
Anthony J. Fontana, Jr. of Theall & Fontanna, Abbeville, for applicants.
*1292 Paul G. Moresi, Jr. of Broussard, Broussard & Moresi, Ltd., Abbeville, for respondents.
DIXON, Chief Justice.
In a third party demand to a libel suit third party defendants Hulin and the police jury filed a rule to require third party plaintiffs Fontana and Dore to furnish a bond for attorney's fees under R.S. 42:261 E.[1] Fontana and Dore opposed the rule on the ground that the statute violates the equal protection clause of the state and federal constitutions, that Hulin and the police jury are not public officials, and that no attorney's fees were being incurred by the third party defendants because they were represented by the district attorney. On November 20, 1980 the trial court ordered Fontana and Dore to post bond in the amount of $15,000 before December 20, 1980, in default of which the third party demand would be dismissed. No bond was posted; on December 23, 1980 the third party claim was dismissed with prejudice.
The court of appeal upheld the constitutionality of R.S. 42:261 E. The trial court's ruling was reversed insofar as it applied the provision to the police jury, the court noting that the statute does not encompass public bodies; the court also ruled that the third party demand should have been dismissed without prejudice. 406 So.2d 248 (La.App. 1981).
We granted certiorari to address the constitutional challenges raised by third party plaintiffs.

1. History
R.S. 42:261 E provides:
"Any party who files suit against any duly elected or appointed public official of this state of or any of its agencies or political subdivisions for any matter arising out of the performance of the duties of his office other than matters pertaining to the collection and payment of taxes and those cases where the plaintiff is seeking to compel the defendant to comply with and apply the laws of this state relative to the registration of voters, and who is unsuccessful in his demands, shall be liable to said public official for all attorneys fees incurred by said public official in the defense of said lawsuit or lawsuits, which attorneys fees shall be fixed by the court.
The defendant public official shall have the right, by rule, to require the plaintiff to furnish bond as in the case of bond for costs, to cover such attorneys fees before proceeding with the trial of said cause." (Footnote omitted).
By Act 304 of 1960 the legislature added subsection D (now E) to R.S. 42:261; it was passed by a unanimous vote of each branch of the legislature and signed into law by Governor Jimmie Davis. Although the legislative history of this particular act is not available, a review of documents endorsed by the legislature during the 1960 Regular Session reveals the motivating force behind the passage of many of these bills. The legislature approved thirty-five acts and proposed four constitutional amendments which deal with interracial relations.[2] Wollett, *1293 Race Relations, 21 La.L.Rev. 85, n. 1 (1961). According to Professor Wollett:
"Many of these acts do not purport, on their face, to deal with segregation or any other aspect of race relations as such. It seems likely, however, on the basis of the facts set forth in legislative debates, discussions, and comments, that in operation they will affect primarily the Negro population of the state."
A joint resolution of the legislature evidences the contempt of state leaders for the decision of the United States Supreme Court in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954).[3] In the resolution the state legislature announced its determination to carry on the fight to "maintain segregation of the races in all phases of our life in accordance with the customs, traditions and laws of our State ..."[4] The statute now before us would further this purpose by making it extremely costly, if not prohibitive, for minority groups or individuals to bring suit against any public official (school board member, police officer, police juror)[5] for *1294 the redress of grievances suffered because of race. The statute classifies litigants as either public officials or those not public officials. Public officials can recover attorney's fees if the plaintiff is unsuccessful, and obtain a bond for attorney's fees before trial. Defendants who are not public officials can recover attorney's fees only in certain kinds of cases as provided by statute.[6]
Wide discretion is normally afforded legislative classifications; the legislative judgment will be upheld "if any state of facts reasonably may be conceived to justify it." McGowan v. State of Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961). Racial classifications, however, must be considered in "light of the historical fact that the central purpose of the Fourteenth Amendment was to eliminate racial discrimination emanating from official sources in the States." McLaughlin v. State of Florida, 379 U.S. 184, 192, 85 S.Ct. 283, 288, 13 L.Ed.2d 222, 228 (1964). For this reason, racial classifications are suspect and subject to the "most rigid scrutiny." Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); Brown v. Board of Education, supra. If viewed by this stringent test the statute could not pass constitutional muster (if it were established that racial reasons caused the classification, a fact not evident from the face of the statute). The purported purpose of protecting public officers from litigation brought solely for its harassment value would not satisfy the requirement of a "compelling governmental interest." Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).
Other than suits for taxes or voter registration, the statute applies to suits, of whatever kind, brought by any person, including paupers, so long as the party defendant is a public official.
The appellate courts have fashioned various jurisprudential exceptions to the statute to avoid its harsh application. In Jones v. Anderson, 277 So.2d 697 (La.App.1973), writ denied 279 So.2d 697 (La.1973), the court held that a bond for attorney's fees could not be imposed on an indigent. The court examined the language in R.S. 42:261 E which states that the plaintiff may be required to furnish bond "as in the case of bond for costs" and analogized this provision to R.S. 13:4522, concluding that since no bond for costs can be required of an indigent under the latter statute, no bond could be demanded under R.S. 42:261 E.
In Cogswell v. Town of Logansport, 321 So.2d 769 (La.App.1975), writ denied, 322 So.2d 768 and 323 So.2d 479 (La.1975), a writ of mandamus was sought by a town to compel its police chief to put an abandoned trailer in the abandoned vehicles lot. The police chief asked that the town post bond. On original hearing, the court held that R.S. 42:261 E does not apply to mandamus actions where suit is brought to compel performance of an official duty. (On rehearing, the court decided a stipulation by the parties that the officer was sued on a matter arising out of the performance of his duties precluded a determination of whether mandamus was intended to be within the actions to which the statute applies).
In Collins v. Rozands, 385 So.2d 332 (La. App.1980), the court avoided the constitutional question by finding that the public officials were represented by insurance companies who were paying the expenses of defense, and, therefore, no attorney's fees were actually "incurred" by any official.
*1295 One appellate court has upheld the statute against constitutional attack. In Houston v. Brown, 292 So.2d 911, 915 (La.App. 1974), an action was brought against the City of Shreveport and a police officer for personal injuries sustained during an arrest. The court held that the statute did not deny "a meaningful opportunity to be heard," and that the Fourteenth Amendment did "not demand access to the courts for all individuals in all circumstances." The bond requirement was considered a legitimate exercise of legislative control over litigation.

2. Equal Protection
The state and federal constitutional guarantees of equal protection mandate that state laws affect alike all persons and interests similarly situated. U.S.Const.Amend. XIV; La.Const. art. 1, § 3 (1974). The effect of the bond requirement is to create two classes of litigants indistinguishable from each other except that one is a private citizen and the other is an elected or appointed public official. As a result of this distinction the class composed of public officials is entitled to demand that a bond for attorney's fees be furnished before the litigation may proceed; no corresponding privilege is afforded members of the other class. Litigants generally are required to pay their own attorney's fees in Louisiana. Failure to post the bond will result in dismissal of the lawsuit.[7] This statutory scheme creates a classification which substantially burdens the right of some persons to be compensated for injuries suffered by them while not placing such a burden on other individuals. Such classifications are permissible only if they are:
"... reasonable, not arbitrary, and ... rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike...." Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed.2d 989, 990-991 (1920).
Reed v. Reed, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225, 229 (1971); Dandridge v. Williams, 397 U.S. 471, 520-522, 90 S.Ct. 1153, 1179-1180, 25 L.Ed.2d 491, 522-523 (1970) (Marshall, J., dissenting).
It is argued that the bond requirement is a justifiable means to deter frivolous suits instituted against public officials for harassment. No support for the suggestion that suits are brought against public officials for harassment with greater frequency than suits against other defendants has been presented in brief or in argument.
A similar statute was invalidated in Sheffield v. State, 92 Wash.2d 807, 601 P.2d 163 (1979), on an equal protection ground.[8] In that case, the court summarily struck down a provision which entailed the filing of a surety bond contemporaneously with institution of suit against the state,[9] relying on Hunter v. North Mason High School, 85 Wash.2d 810, 539 P.2d 845 (1975). Hunter dealt with a "nonclaim" statute which required notice of claims against governmental entities to be given within 120 days from the date the claim arose. The court held that, even under minimal scrutiny, the statute bore no reasonable relation to its *1296 asserted purposesit unjustifiably discriminated against persons with claims against the government in violation of the equal protection clause of the Fourteenth Amendment.[10]
"... This prerequisite to tort recovery has no counterpart in actions between private parties. The statutes thus create two classes of tortfeasors, governmental and nongovernmental, and grant the one a procedural advantage not available to the other. Concomitantly they produce two classes of tort victims and place a substantial burden on the right to bring an action of one of them." Hunter v. North Mason High School, supra, 539 P.2d at 847.
In the case before us, the instant statute also divides tortfeasors into two classes: governmental tortfeasors and private tortfeasors. Simultaneously two classes of victims are created: victims of governmental tortfeasors and victims of private tortfeasors. Only the first class of victims must suffer the additional burden of a bond for attorney's fees. No reasonable justification for this disparate treatment has been supplied. The statute violates the equal protection clauses of the state and federal constitutions.

3. Due Process and Access to Courts
The challenged provision is also defective because it deprives the plaintiff of due process and denies open access to the courts. U.S.Const.Amends. V, XIV; La. Const. art. 1 §§ 2, 22 (1974). In Beaudreau v. Superior Court of Los Angeles County, 14 Cal.3d 448, 121 Cal.Rptr. 585, 535 P.2d 713 (1975), a cost bond statute was struck down on the ground that it constituted a taking of property without a prior hearing in violation of the due process clause of the Fourteenth Amendment.[11] The court noted that the purpose of the challenged sections was to protect public entities and public employees against unmeritorious litigation. As in this case, decisional law allowed the plaintiff an opportunity to qualify to proceed in forma pauperis. Under the statute, the court reasoned that a taking occurs if the *1297 plaintiff refuses to post the bond and thereby relinquishes his property interest in the form of his claim against the public entity or employee. Conversely, should the plaintiff secure his undertaking from a corporate entity, he will forfeit the nonrefundable premium; if money is deposited in court, the plaintiff is deprived of its use during pendency of the suit. The court concluded that due process mandates a hearing before the undertaking is posted to inquire into the merits of the litigation and the reasonableness of the amount of the bond in light of the defendant's probable expenses.
In Williams v. London, 370 So.2d 518, 521 (La.1979), Judge Tate observed in a concurring opinion that the constitutionality of R.S. 42:261 E was not before the court. Citing Beaudreau v. Superior Court of Los Angeles County, supra, he stated that the Louisiana statute is invalid for reasons similar to those used to invalidate the California statute:
"... a requirement that a citizen furnish a bond and be liable for attorney's fees when he sues a public official, whereas an official suing a citizen need not file bond or be liable for attorney's fees, is in my opinion unconstitutional. For one reason, the statute offends Art. 1, Section 22, La.Const. of 1974: `All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.'"
In Boddie v. Connecticut, 401 U.S. 371, 374-375, 91 S.Ct. 780, 784, 787, 28 L.Ed.2d 113, 117, 120 (1971), the court declared that a Connecticut statute which required prepayment of court fees and costs violated due process because it precluded access to the courts to those plaintiffs who could not afford to pay the costs. The court stated:
"Perhaps no characteristic of an organized and cohesive society is more fundamental than its erection and enforcement of a system of rules defining the various rights and duties of its members, enabling them to govern their affairs and definitively settle their differences in an orderly, predictable manner...."
. . . . .
"Just as a generally valid notice procedure may fail to satisfy due process because of the circumstances of the defendant, so too a cost requirement, valid on its face, may offend due process because it operates to foreclose a particular party's opportunity to be heard. The State's obligations under the Fourteenth Amendment are not simply generalized ones; rather, the State owes to each individual that process which, in light of the values of a free society, can be characterized as due."[12]
The present statute unconstitutionally denies litigants due process and open access to Louisiana courts.
For these reasons, that portion of the judgment of the Court of Appeal upholding the constitutionality of R.S. 42:261 E is reversed, and R.S. 42:261 E is declared unconstitutional; the demand of third party defendant Jewitt Hulin for bond for attorney's fees is rejected, at the cost of third party defendant.
WATSON, J., concurs.
LEMMON, J., concurs and will assign reasons.
MARCUS, J., concurs in the result.
NOTES
[1] This action for damages was brought by Mrs. Francois Detraz, Marlene Detraz and Ada Detraz against Anthony Fontana, Monte Williams, Charles Dore and Louisiana State Newspapers, Inc., d/b/a Abbeville Meridional. The petition alleges that defendants made certain libelous statements concerning the lease of a tract of land for a waste dumping site by Francois Detraz to the Vermilion Parish Police Jury. Defendants Anthony Fontana and Charles Dore answered the petition and filed a third party demand against J. Minos Simon, the attorney for plaintiffs, and the Vermilion Parish Police Jury, as well as a reconventional demand against plaintiffs. In a supplemental pleading defendants Fontana and Dore filed a third party claim against Jewitt Hulin, the secretary-treasurer of the police jury, alleging that the statements made by them were based on information supplied by Hulin.
[2] Compare these acts passed during the 1960 Regular Session of the Mississippi legislature: chs. 241, 253, 254, 256-261, 273, 288, 365.

Several of the acts have been struck down on the basis of racial discrimination. In Bush v. Orleans Parish School Board, 187 F.Supp. 42 (E.D.La.1960), aff'd 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed.2d 806, Acts 333, 495, 496 and 542 of 1960 (as well as Act 256 of 1958, Act 319 of 1956, and Act 555 of 1954) were declared unconstitutional. See also Anderson v. Martin, 375 U.S. 399, 84 S.Ct. 454, 11 L.Ed.2d 430 (1964), declaring Act 538 of 1960 unconstitutional; Lombard v. Louisiana, 373 U.S. 267, 83 S.Ct. 1122, 10 L.Ed.2d 338 (1963), reversing convictions under Act 77 of 1960.
Cost bond statutes were passed in other states around the same time as the Louisiana provision. The Idaho legislature enacted I.C. § 6-610 in 1953; RCW 4.96.010 was passed by the Washington legislature in 1967; the California provisions were added in 1963; the 1962 legislature of Alaska enacted AS 09.50.260 (now repealed); a similar provision was passed in Indiana in 1965 (Ind. 34-17-5).
[3] The resolution reads in part:

"Whereas, the rights and liberties of the people of the United States are threatened as never before by enemies, both foreign and domestic; and
Whereas, these enemies have concentrated their attacks upon the States in the South and are there employing what has been described by these enemies as `the Party's most powerful weapon ... racial tension', and, the success of these subversive forces has been so great that they have been able to pit one section of the country against another, one branch of the Federal Government against the governments of the several states and, in many places, the people of one race against the people of another; and
Whereas, in Louisiana the design of these evil forces has been largely thwarted through the prompt and vigorous action of the Legislature of Louisiana aided by the other branches of the State Government, with the result that the turmoil created by the Black Monday decision of May 17, 1954, has been held in check and relative peace and good will has been maintained among our people; ..." H.Con.Res. 6, 23rd Reg.Sess. (1960), Official Journal of the Senate (1960), at 210.
Other state legislatures reacted in a corresponding manner to Brown v. Board of Education, supra. In Cooper v. Aaron, 358 U.S. 1, 15, 78 S.Ct. 1401, 1408, 3 L.Ed.2d 5, 15 (1958), the Court discussed the response of leaders in the State of Arkansas (the state directly affected by Brown):
"... the conditions they [findings of the district court] depict are directly traceable to the actions of legislators and executive officials of the State of Arkansas, taken in their official capacities, which reflect their own determination to resist this Court's decision in the Brown case and which have brought about violent resistance to that decision in Arkansas. In its petition for certiorari filed in this Court, the School Board itself describes the situation in this language: `The legislative, executive, and judicial departments of the state government opposed the desegregation of Little Rock schools by enacting laws, calling out troops, making statements villifying federal law and federal courts, and failing to utilize state law enforcement agencies and judicial processes to maintain public peace.'"
The Court warned:
"... the constitutional rights of children not to be discriminated against in school admission on grounds of race or color declared by this Court in the Brown case can neither be nullified openly and directly by state legislators or state executive or judicial officers, nor nullified indirectly by them through evasive schemes for segregation whether attempted `ingeniously or ingenuously.'" 358 U.S. at 18, 78 S.Ct. at 1409, 3 L.Ed.2d at 16.
[4] To the same effect, see also Governor's Address, Official Journal of the House (1960), at 53 et seq.; Resolution 4 of the State of North Carolina read before the Louisiana House of Representatives, Official Journal of the House (1960), at 207 et seq.
[5] The definition of a public official has been liberally construed to include a high school principal (Prentice v. McGowen, 346 So.2d 1361 (La.App.1977)), a police officer (Houston v. Brown, 292 So.2d 911 (La.App.1974); Jones v. Anderson, 277 So.2d 697 (La.App.1973), writ denied 279 So.2d 697 (La.1973); Bolden v. City of Shreveport, 278 So.2d 138 (La.App.1973), writ denied 279 So.2d 685 (La.1973); Foshee v. Longino, 236 So.2d 870 (La.App.1970)), and a state trooper (Brown v. Aetna Life & Casualty Ins. Co., 394 So.2d 290 (La.App.1980)).

The term has not been construed so broadly as to include public entities such as the state (Brown v. Aetna Life & Casualty Ins. Co., supra) or a police jury (Detraz v. Fontana, 406 So.2d 248 (La.App.1981)).
[6] See Comment, Attorney's Fees As An Element of Damages: The General Rule and Its Exceptions, 20 La.L.Rev. 389 (1960). See, e.g., R.S. 9:3902 (failure of surety to pay); R.S. 22:658 (failure of insurance company to pay); R.S. 23:632 (failure to pay employees' wages); R.S. 38:2246 (claims of materialmen and laborers on public works); R.S. 45:454 (enforcement of railroads' obligation to relieve natural drainage); R.S. 23:1201.2 (arbitrary failure to pay workmen's compensation claim); R.S. 23:364 (failure to pay minimum wage).
[7] The sanction of dismissal was developed by the courts. See Gisclair v. Ripp, 378 So.2d 553 (La.App.1979).
[8] But see Pigg v. Brockman, 79 Idaho 233, 314 P.2d 609 (Idaho 1957), holding that a statute requiring a plaintiff to file an undertaking for costs before maintaining a suit against an officer charged with the enforcement of criminal laws did not violate the equal protection clause.
[9] The statute provides in part:

"Any person or corporation having any claim against the state of Washington shall have a right of action against the state in the superior court. The plaintiff in such action shall, at the time of filing his complaint, file a surety bond executed by the plaintiff and a surety company authorized to do business in the state of Washington to the effect that such plaintiff will indemnify the state against all costs that may accrue in such action, and will pay to the clerk of said court all costs in case the plaintiff shall fail to prosecute his action or to obtain a judgment against the state: Provided, That in actions for the enforcement or foreclosure of any lien upon, or to determine or quiet title to, any real property in which the state of Washington is a necessary or proper party defendant no surety bond as above provided for shall be required." RCW 4.92.010.
[10] Several other states have held that a provision requiring a private citizen to notify the governmental entity within a certain time period (ranging from 30 to 120 days) unconstitutionally discriminates against the private plaintiff in derogation of the Fourteenth Amendment. See Reich v. State Highway Dept., 386 Mich. 617, 194 N.W.2d 700 (1972); Kossak v. Stalling, 277 N.W.2d 30 (Minn.1979); O'Neil v. City of Parkersburg, 237 S.E.2d 504 (W.Va. 1977); Turner v. Staggs, 89 Nev. 230, 510 P.2d 879 (1973), cert. denied 414 U.S. 1079, 94 S.Ct. 598, 38 L.Ed.2d 486.
[11] The defective sections read as follows:

"(a) At any time after the filing of the complaint in any action against a public entity, the public entity may file and serve a demand for a written undertaking on the part of each plaintiff as security for the allowable costs which may be awarded against such plaintiff. The undertaking shall be in the amount of one hundred dollars ($100) for each plaintiff or in the case of multiple plaintiffs in the amount of two hundred dollars ($200), or such greater sum as the court shall fix upon good cause shown, with at least two sufficient sureties, to be approved by the court. Unless the plaintiff files such undertaking within 20 days after service of a demand therefor, his action shall be dismissed.
(b) This section does not apply to an action commenced in a small claims court." Cal.Ann. Gov.Code § 947 (West 1954).
"(a) At any time after the filing of the complaint in any action against a public employee or former public employee, if a public entity undertakes to provide for the defense of the action, the attorney for the public employee may file and serve a demand for a written undertaking on the part of each plaintiff as security for the allowable costs which may be awarded against such plaintiff. The undertaking shall be in the amount of one hundred dollars ($100), or such greater sum as the court shall fix upon good cause shown, with at least two sufficient sureties, to be approved by the court. Unless the plaintiff files such undertaking within 20 days after service of the demand therefor, his action shall be dismissed.
(b) This section does not apply to an action commenced in a small claims court." Cal.Ann. Gov.Code § 951 (West 1954).
An equal protection argument was not presented to the court. See Beaudreau v. Superior Court of Los Angeles County, supra, 121 Cal. Rptr. at 587, n.5, 535 P.2d at 715 n. 5. The requirement of a prior hearing is embodied in an Indiana provision dealing with bonds in public lawsuits. Ind. 34-17-5. Due to this safeguard, the statute withstood due process attack in State ex rel. Haberkorn v. DeKalb Circuit Court, 251 Ind. 283, 241 N.E.2d 62 (1968).
[12] But see United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973); Ortwein v. Schwab, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973), rehearing denied 411 U.S. 922, 93 S.Ct. 1551, 36 L.Ed.2d 315.