462 So.2d 149 (1985)
Henry A. SIBLEY, III, Curator of Jane Elizabeth Sibley, Interdict
v.
The BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY and Agricultural & Mechanical College.
No. 84-C-0571.
Supreme Court of Louisiana.
January 14, 1985.
*151 David W. Robinson, Dué, Dodson, deGravelles, Robinson & Caskey, Steve Marks, Marks & Lear, Baton Rouge, for applicant.
Vincent P. Fornias, Kantrow, Spaht, Weaver & Blitzer, Baton Rouge, for respondent.
CALOGERO, Justice.
In this medical malpractice case, relatives on behalf of Jane Sibley seek damages from the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, administrators of the LSU Medical Center in Shreveport, in excess of the $500,000 limitation of liability which is imposed by La.Rev.Stat. 40:1299.39(B). Neither the trial court nor the First Circuit Court of Appeal had any difficulty finding liability. In fact, liability was not an issue on appeal. Rather, plaintiff attacked the application and the constitutionality of La.Rev.Stat. 40:1299.39 et seq. Relying on their own earlier decision in Williams v. Lallie Kemp Charity Hospital, 428 So.2d 1000 (La.App. 1st Cir. 1983), cert. denied 434 So.2d 1093 (La.1983), the First Circuit affirmed the district court and found the Act applicable to the state, and the limitation of liability constitutional.
Miss Sibley suffered severe brain damage as a result of cardio-pulmonary arrest while a patient in the psychiatric ward at LSU Medical Center in Shreveport in September of 1980. Prior to her admission to this teaching hospital, administered by the LSU Board of Supervisors, Miss Sibley had been a patient in a private psychiatric hospital, where she was diagnosed as having, and treated for, severe depression. Although she purportedly improved somewhat with this conservative treatment (counseling and psychotherapy without medication), for financial reasons, she was transferred to the public facility. At LSU Medical Center, she was re-diagnosed by the staff physician of the treatment team as psychotic, and anti-psychotic medications were administered.[1] Side effects apparently triggered by the neuroleptic drugs were treated by other medication, which caused an anticholinergic reaction, culminating (after 39 days in the hospital) in cardio-pulmonary arrest *152 with resultant massive brain damage. Since then, Miss Sibley has been in intensive care at various hospitalscurrently Baton Rouge Generaland, at time of trial in January, 1983, her medical expenses had already exceeded $423,000. Testimony of attending nurses and physicians at Baton Rouge General indicates that Miss Sibley has made progress. This young woman who was preparing to enter college before her hospitalization, presently has an IQ of 77 and functions between 8 and 10 years in the intelligence area, with an estimated emotional age of 4 years. Although testimony indicates that she is a candidate for further rehabilitation and improvement and can expect to attain a normal life expectancy, Miss Sibley will not likely achieve any significant degree of self-sufficiency and the significant cost of a lifetime of custodial care remains ahead.

APPLICABILITY OF LA.REV.STAT. 40:1299.39
Plaintiff contends that whatever the constitutionality of La.Rev.Stat. 40:1299.39 and its $500,000 limitation, the act is simply not applicable as regards the liability of the State of Louisiana. She contends that that statute applies by its terms only to the health care providers therein designated, for there is no reference in the act to its coverage being extended to the state or the state institutions providing medical services.
The Court of Appeal dismissed plaintiff's argument by gleaning a legislative intent (to cloak the state with a $500,000 limitation) from broad public policy considerations (the medical malpractice crisis of the 1970's which threatened continued medical care in both the public and private sectors) and an expansive interpretation of R.S. 40:1299.39A(1)'s definition of "person". "Person" is defined in the act as "any individual acting in a professional capacity... and shall include but not be limited to" physicians and other kinds of designated health care provider specialists. The Court of Appeal interpreted the language "but not be limited to" as an indication of the Legislature's intent for the statute to provide broad coverage, including the State of Louisiana. While those reasons standing alone are not entirely convincing, we nonetheless agree with the Court of Appeal's conclusion, with these additional reasons.
La.Rev.Stat. 40:1299.39, A through G, constitutes the entirety of Part XXI-A, "Malpractice Liability for State Services", a division within Chapter 5 "Miscellaneous Health Provisions" (of Title 40). That very title of Part XXI-A, which prefaces R.S. 40:1299.39, relates to liability for state services, an indication that the section is not designedly applicable only to the health care providers listed in the definition of "persons" at 1299.39(a), but to all liability arising out of state services, including liability of the State of Louisiana. The title to Part XXI-A forms part of the law, as it was specifically included in the substance of Act 66 of 1976,[2] an act later repeatedly amended and reenacted without deletion or omission of Part XXI's title.
That malpractice claims against the state as well as against health care providers are covered by 1299.39, is clearly evident from subsection D which prescribes the procedure for the handling of all such claims. It provides that "[a]ll malpractice claims against the state shall be submitted to and administered by the Division of Administration." (Emphasis provided)
And, most pointedly, subsection B, which imposes the limitation of liability, is very *153 broad and general. It does not cloak only the health care providers specified in the Sec. 1299.39A(1) definition of "person"; rather it provides in no uncertain terms:
B. Limitation of liability. Notwithstanding any other provisions of the law to the contrary, no judgment shall be rendered, and no settlement or compromise shall be entered into for the injury or death of any patient in any action or claim for an alleged act of malpractice in excess of five hundred thousand dollars plus interests and costs.
For these reasons and those given by the Court of Appeal, we conclude that La.Rev. Stat. 40:1299.39, Malpractice Liability for State Services, is applicable to the state and therefore to those state agencies for which it is financially responsible.

ASSERTED THEORY OF CORPORATE NEGLIGENCE
Plaintiff's contention is that her mistreatment occurred as a result of inherent weaknesses in a team system treatment approach utilized at this teaching hospital. It is urged that inadequacies in supervision, monitoring structures, techniques and practices, and consultation policies constituted independent or corporate negligence on the part of the state institution, which is not within the coverage of the statute.
The theory of corporate negligence would permit the plaintiff to seek damages because of the negligence of the hospital's administrators, separate and apart from such defendants' vicarious liability for the negligence of the hospital's medical personnel. According to A. Nadel, "Hospital's Liability for Negligence in Failing to Review or Supervise Treatment Given By Doctor, or to Require Consultation," 12 A.L.R. 4th 57 (1982), this theory "recognizes the existence of a duty owed directly by a hospital to a patient in connection with the care and treatment given to him, and which accordingly holds that a hospital can be held liable for its own negligence...." The article continues, that "liability has been imposed on a hospital on the theory of independent negligence in failing to review, supervise, or require consultation about the treatment given by the physician where the situation indicates that the hospital had the opportunity for such review."
However, we are not called upon to assess the liability of a hospital in the private sector, which might be held liable for its own negligence. We simply have to decide whether the defendant, LSU Board of Supervisors, or the State of Louisiana, has financial responsibility for malpractice claims against it. Since the LSU Board of Supervisors is a constitutionally created corporate body of the state formed to administer the institutions and programs within its system, we must conclude that it is an agency of the State of Louisiana. Because of that we do not see how it makes a difference whether plaintiff wants to assert the fault of the administrators rather than the administrators' vicarious liability for the negligence of state medical personnel. The state and its agency, the LSU Board of Supervisors, are covered by the act.

SOVEREIGN IMMUNITY
Plaintiff contends that the limitation of liability statute applicable to the state (R.S. 40:1299.39) offends the limited[3] Louisiana constitutional proscription against sovereign immunity.
Article XII, Section 10(A) of the Louisiana Constitution of 1974 provides:
Section 10. (A) No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall *154 be immune from suit and liability in contract or for injury to person or property.
Plaintiff would have us read the constitutional proscription as not only denying the state immunity from suit and immunity from liability in contract or tort, but also as guaranteeing in such lawsuits against the state, such compensatory damages as were prevalent in the law (C.C. art. 2315 included), at the time of passage of the 1974 Louisiana Constitution. Plaintiff contends that any statute which reduces the value of an award against the state for damages operates unconstitutionally to relieve the state of a part of its liability, in violation of Article XII, Section 10A. In support of that argument plaintiff cites Segura v. Louisiana Architects Selection Board, 362 So.2d 498, 499 (La.1978). The Court of Appeal correctly responded when it noted that
Segura struck down the offending statute, LSA-R.S. 13:4521, only because it attempted to favor the state with a privilege, that is, exemption from payment of court costs, unavailable to other defendants in similar suits, not because it was "limiting" the state's liability with respect to the plaintiff's recovery to the full extent of his injury. 446 So.2d 760, 767 (La.App. 1st Cir.1983).
We would also point out that Article XII, Section 10(A) does not make the sweeping proscription for which plaintiff contends (i.e., statutes reducing recovery quantum offend Article XII, Section 10(A)), either explicitly or implicitly. Nor is that interpretation supported by the constitutional debates. Transcripts from the 1973 Constitutional Convention indicate that the original provision, tracking that of Article III, Section 35 of the 1921 Constitution, required legislative authorization before a lawsuit could be initiated against the state, its agencies or political subdivisions. Eight different amendments, however, each including the concept of a waiver or abolition of sovereign immunity, were offered in opposition to the committee proposal and rejected. On their ninth attempt, the delegates approved a limited waiver of sovereign immunity, a compromise which now comprises Article XII, Section 10 of the Louisiana Constitution. The transcripts indicate that the proponents of this waiver were primarily interested in eliminating the unnecessary, burdensome and costly first step of getting legislative approval in order to bring suit against the state or its subdivisions. Among those reciting this objective was the then Supreme Court Justice Albert Tate, Jr. who said:
The effect of the removal of a legislative judgment whether to permit someone to file a suit is simply to eliminate one step... and it's simply to let it go to the Court system ...

See State of Louisiana Constitutional Convention Verbatim Transcripts, July 26 and 27, Volume V, pages 397 through 433.
Therefore, we simply find no basis to support plaintiff's contention that the Louisiana Constitution by denying the state immunity from suit in contract or tort or for injury to person or property, prohibits the Legislature's limiting in any respect recoverable tort damages.

EQUAL PROTECTION AND DUE PROCESS
Plaintiff argues that modification or limitation of a cause of action may infringe on constitutional guarantees or violate constitutional prohibitions. More particularly, plaintiff asserts that this statute (La.Rev. Stat. 40:1299.39) and its counterpart in the Medical Malpractice Act (La.Rev.Stat. 1299.41) grant to a special class of citizens (malfeasant doctors) an exclusive privilege or immunity by relieving them of a substantial part of their liability under La.C.C. art. 2315. Furthermore, it is argued, the limitation applicable to state medical services favors this class of citizens at the expense of those least able to afford the effect of this discriminationthe indigent who must utilize the services provided by these health care providers. On this basis, plaintiff urges that the statutory limitation must be subjected to strict scrutiny. Plaintiff would probably settle for a "means scrutiny" test, a middle tier between strict *155 scrutiny and rational basis, as enunciated in Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) in the assessment of these constitutional considerations. And she takes comfort in Detraz v. Fontana, 416 So.2d 1291 (La.1982), which presumably imposed something of a middle tier approach. The Detraz court asserted that statutes which affect the process of redress of injury in a discriminatory manner must be reasonable, not arbitrary, resting upon some ground of difference having a fair and substantial relation to the legislative objective.[4] Plaintiff submits that the limitation of recovery, creating classifications of seriously injured medical tort victims versus those not as seriously injured (and victims of medical torts versus victims of other torts), is unreasonable and arbitrary and rests upon grounds of difference which have no fair and substantial relationship to the legislative objective.
Equal protection and due process guarantees of the state and federal constitutions, however, protect only against the violation of individual rights by unreasonable statutory limitations. In the area of equal protection, a two-stage process of analysis is employed. Initially, a determination is necessary as to whether the subject Act disadvantages a "suspect class" or infringes upon a fundamental right. If so, a strict scrutiny analysis is required; if not, it is only necessary to determine whether the act rationally furthers some legitimate, articulated state purpose or goal. Bazley v. Tortorich, 397 So.2d 475, 483 (La.1981). We reaffirm, just as in Bazley, that a victim's right to sue in tort for full recovery for an injury is not a fundamental right. Classifications based on race, religion or political beliefs are, of course, absolutely prohibited, but other classifications are tested on a less rigorous basis, depending on the character of the classification involved and the strength of the state interest supporting the distinction. Hargrave, "Statutory" and "Hortatory" Provisions of the Louisiana Constitution of 1974, 43 La.L.Rev. 647, 670 (1983).
Obviously, this statute does not involve a classification prohibited by equal protection considerations. Nor does it limit the exercise of a fundamental constitutional right. Rights found to be fundamental include the following: freedom of expression and association, NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); right to vote and participate in the electoral process, Harper v. Virginia Board of Election, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); right to interstate travel, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); right to fairness in the criminal process, e.g., Mayer v. Chicago, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); right to fairness in procedures concerning governmental deprivations of life, liberty or property, e.g., Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); right to privacy, e.g., Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). See generally, Nowak, Rotunda & Young, Constitutional Law, 418 (1978). The right to full tort recovery which plaintiff seeks *156 to exercise is not within these fundamental categories.
Furthermore, we disagree that Detraz is an analogous situation and thus see no basis for the application of a middle-ground "means scrutiny" test to the Act. The court's decision in Detraz was required by the recognition that the unquestioned motive behind that statute made it constitutionally infirm. And, if a mere rational basis analysis is applicable, the United States Supreme Court has declared that the constitutional safeguard of equal protection is invoked "only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective." McGowan, 366 U.S. at 425, 81 S.Ct. at 1105. Such a statement confirms the obvious fact that the legislative process is a difficult task and legislative solutions will be accorded great latitude and deference by the judiciary when dealing with an equal protection assessment. Assuming a legitimate state objective (and assuring the continued availability of quality health care is surely legitimate), the question is not "[w]hether in fact the Act will promote (the legislature's objective) [but] the Equal Protection Clause is satisfied by our conclusion that the Legislature could rationally have decided that (it) ... might...." Minn. v. Cloverleaf Creamery, 449 U.S. 456, 466, 101 S.Ct. 715, 725, 66 L.Ed.2d 659 (1981).
Despite plaintiff's assertion that courts of more than one-half of the states with statutes limiting medical malpractice recoveries have refused to uphold their constitutionality or have declared this type of legislation violative of the equal protection guarantees of their state, this does not appear to be the case. Although the California Supreme Court originally found its limitation on payment of future damages to be constitutionally infirm, on rehearing in July, 1984, it reversed its earlier decision and stated that "[s]o long as the measure is rationally related to a legitimate state interest, policy determinations as to the need for, and desirability of, the enactment are for the Legislature."[5] Even more significantly, the Supreme Court of Indiana upheld its statute, upon which the Louisiana Act was probably modelled,[6] in the face of constitutional challenge. Johnson v. St. Vincent Hospital, 273 Ind. 374, 404 N.E.2d 585 (1980). In so doing, the Indiana Supreme Court relied heavily on Duke Power Co. v. Carolina Environmental Study, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). Duke Power Co. involved a dollar limitation upon the recovery in cases of nuclear accidents resulting from the operation of federally licensed nuclear plants. The stated purpose of the Price-Anderson Act was to protect the public and encourage the development of the nuclear energy industry. Analogously, the Louisiana Legislature acted to insure that the general public would be protected from the consequences of what they perceived to be a malpractice insurance crisis and assured of continued affordable health care. In summary, plaintiff cites only one case which we can conclude supports his claim that a court of another jurisdiction has refused to uphold the constitutionality of a statute limiting medical malpractice recoveries as violative of equal protection guarantees.[7] To the contrary, however, we have the high courts of Indiana and California, as well as the United States Supreme Court, upholding a dollar limitation upon recovery.[8]
*157 On the basis of the above authority, we conclude that the Act need only be subjected to a rational basis analysis. Such an analysis does not render La.Rev. Stat. 40:1299.39 constitutionally infirm.
Plaintiff also attacks La.Rev.Stat. 40:1299.39 as a violation of Art. I, Sec. 22 of the State Constitution, which deals with access to the courts, a matter of procedural due process. Art. I, Sec. 22 provides:
All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to his person, property, reputation, or other rights.
Plaintiff would interpret this provision as requiring a remedy unrestricted by any unreasonable or arbitrary limitation or obstruction and would demand heightened judicial scrutiny with regard to a statute's achievement of a stated legislative goal since the provision has constitutional sanctity.
This Court, however, has already set the analytical standard to be applied. In Bazley and Everett v. Goldman, 359 So.2d 1256 (La.1970), we said:
This provision, like the Fourteenth Amendment to the United States Constitution, protects an individual's access to the judicial process. Where access to the judicial process is not essential to the exercise of a fundamental constitutional right, the legislature is free to allocate access to the judicial machinery or any system or classification which is not totally arbitrary. Bazley, 397 So.2d at 485.
We concluded in Everett v. Goldman that the right of malpractice claimants to sue for damages caused them by medical professionals does not involve a fundamental constitution right and, as such, is tested only by the lesser standard of rational basis. Everett, 359 So.2d at 1268-69. We agree with the Court of Appeal conclusion that a limitation of liability on medical malpractice claims is at least reasonably related to the state's attempt to minimize its costs and maintain its medical services to the citizens of Louisiana at low or no costs.
Similarly, an analysis of statutes for substantive due process reveals that cases involving economic and social welfare legislation are to be distinguished from cases involving fundamental civil rights. A statute enacted to limit liability on malpractice claims for state medical services cannot be classified as an infringement of a fundamental civil right. For legislation involving economic and social welfare interests, the test of substantive due process is whether the regulation is reasonable in relation to the goal sought to be attained and is adopted in the interest of the community as a whole. Everett v. Goldman, 359 So.2d 1256, 1268 (La.1978) (citing West Coast Hotel v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937)). Chief Justice Burger, writing for the United States Supreme Court in Duke Power Co. found a limitation of liability provision to be a classic example of a legislative effort to structure and accommodate the burdens and benefits of economic life. As has been stated by this Court in past decisions, our state and federal constitutions do not empower us to second-guess legislators in their heavy responsibility of weighing competing interests. We are not asked to decide whether this or any legislation is wise or best fulfills the relevant social and *158 economic objectives that our state might ideally espouse. Thus, we can only conclude that a limitation of liability on state medical malpractice claims is reasonably related to the goal of assuring the availability of affordable public health care to citizens of this state.

Decree
We find La.Rev.Stat. 40:1299.39 to be applicable to the state and its agencies; its provisions do not unconstitutionally violate either the equal protection or due process clauses of the state or federal constitutions, nor Article XII, Section 10 of the Louisiana Constitution of 1974, the provision on sovereign immunity. We therefore affirm the judgment of the trial court and the Court of Appeal.
JUDGMENTS OF THE TRIAL COURT AND THE COURT OF APPEAL AFFIRMED.
WATSON, J., dissents.
LEMMON, J., dissents on the equal protection issue.
NOTES
[1] These neuroleptic drugs chemically affect the central nervous system, altering thought processes and producing dramatic physical affects in the body.
[2] No. 66
Senate Bill No. 801. By: Mr. Williamson, Chairman,
 Senate Committee on Health
 and Welfare, etc.
AN ACT
To amend Chapter 5 of Title 40 of the Louisiana Revised Statutes of 1950 to add thereto a new part ....
Be it enacted by the Legislature of Louisiana:
Section 1. Part XXIA of Chapter 5 of Title 40 of the Louisiana Revised Statutes of 1950, comprising Section 1299.39 thereof, is hereby enacted to read as follows:
PART XXI-A. MALPRACTICE LIABILITY FOR STATE SERVICES
1299.39. Medical malpractice liability ... (emphasis provided)
[3] See, e.g., Hargrave, "`Statutory' and `Hortatory' Provisions of the Louisiana Constitution of 1974", 43 La.L.Rev. 647, 650 (1983):

"In short, the convention did not adopt broad sovereign immunity in all suits, but did assume that sovereign immunity existed in some areas. These areas were never defined."
* * * * * *
"One might wonder why the convention did not clearly abrogate all sovereign immunity. The simple answer is that there were not enough votes to do soattempts to do so were rejected."
[4] In Detraz, this Court found unconstitutional a statute granting public officials the right to require persons bringing suit against them to furnish a bond for attorney fees before proceeding with trial. It should be noted that the statute at issue created a classification of governmental tortfeasors entitled to demand such a bond, whereas private tortfeasors could not, and that the result was to make it extremely costly, if not prohibitive, for minority groups or individuals to bring suit against public officials such as school board members, police officers, or police jurors for the redress of grievances, suffered, in the case there under consideration, because of race. Quoting McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961), this Court noted that wide discretion is normally afforded legislative classifications, but added that racial classifications are suspect and subject to the "most rigid scrutiny." Detraz v. Fontana, 416 So.2d at 1294 (quoting Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967)).
[5] American Bank & Trust Co. v. Community Hospital, 36 Cal.3d 359, 204 Cal.Rptr. 671, 683 P.2d 670 (S.Ct.Calif.1984).
[6] According to Comment, 50 Tul.L.Rev. 655 (1976) and a comparison of the statutes, sections of the Indiana plan, Ind.Ann.Stat. §§ 16 9.5 et seq. (Burns Supp.1975), were enacted verbatim into Louisiana law.
[7] Carson v. Maurer, 120 N.H. 925, 424 A.2d 825 (1980).
[8] Several of the cases cited by the plaintiff in support of this proposition were not the highest courts of the jurisdiction. Simon v. St. Elizabeth Medical Center, 355 N.E.2d 903 (Ohio C.P. Montgomery Cty.1976); Graley v. Satayatham, 343 N.E.2d 832 (Ohio C.P. Cuyahoga Cty.1976). Others made a specific finding of fact that no actual medical malpractice crisis existed in those states and therefore the legislative solution obviously could not further the stated aims of the statutes. Arneson v. Olson, 270 N.W.2d 125 (N.D.1978); Boucher v. Sayeed, 459 A.2d 87 (R.I.1983). For instance, evidence had been presented in the North Dakota case to establish that the state had the sixth lowest insurance rates in the country for medical malpractice insurance and that one of the largest insurance companies was accepting application for malpractice insurance at lower rates. The Idaho court applied a heightened level of scrutiny (which we have not found to be a valid method of analysis for this type of social economic legislation) in reviewing its statute, and even so, simply remanded to the district court for further factual findings. Jones v. State Board of Medicine, 97 Idaho 859, 555 P.2d 399 (1976). In Illinois, the high court struck down a recovery limitation on medical malpractice claims, but the decision was based on a violation of a provision of the Illinois constitution prohibiting special laws. Wright v. Central Dupage Hospital Assoc., 63 Ill.2d 313, 347 N.E.2d 736 (1976). Since the Louisiana Constitution does not contain this particular provision, there can be no claim that a similar result should be reached in our courts.