STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-394


LARRY BIZE, SR. AND MICHELLE R. BIZE

VERSUS

MALCOLM LARVADAIN, ET AL.


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 257,342-F
HONORABLE GEORGE CLARENCE METOYER JR., DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Marc T. Amy, Judges.

**JUDGMENT DENYING MOTION TO OPPOSE SETTING OF BOND FOR SECURITY OF COSTS, RULE TO SHOW CAUSE & DECLARE STATUTE UNCONSTITUTIONAL AFFIRMED.**

**JUDGMENT SUSTAINING THE EXCEPTION OF PEREMPTION AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

**JUDGMENT SUSTAINING THE EXCEPTION OF RES JUDICATA REVERSED. EXCEPTION OF RES JUDICATA DENIED.**


**Cooks, J., concurs in part and dissents in part with reasons.**

**Nelson Welch Cameron**
**675 Jordan Street**
**Shreveport, LA   71101**
**(318) 226-0111**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Larry Bize, Sr.**
    **Michelle R. Bize**

**James Huey Gibson**
**Gibson Law Partners, LLC**
**Post Office Box 52124**
**Lafayette, LA   70505**
**(337) 761-6023**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Malcolm Larvadain**
    **Edward Larvadain, III**

**Kelvin G. Sanders**
**418 Desoto Street**
**Alexandria, LA   71301-8305**
**(318) 487-0009**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Edward Larvadain, Jr.**

**Alexander T. Reinboth**
**Louisiana Department of Justice, Civil Division**
**Post Office Box 94005**
**Baton Rouge, LA   70804**
**(225) 326-6000**
**COUNSEL FOR OTHER APPELLEE:**
    **Attorney General for the State of Louisiana**

**AMY, Judge.**

The plaintiffs filed this claim against their former attorney, and purported former attorneys, alleging legal malpractice in a number of acts and omissions, including the entry of a settlement. The plaintiffs appealed to this court after the trial court sustained the defendants' exceptions of res judicata and peremption. The plaintiffs further seek review of the trial court's denial of their constitutional challenge of the setting of bond for security for costs pursuant to La.R.S. 13:4522. For the following reasons, we affirm in part; reverse in part; and remand for further limited proceedings as instructed. Upon reversal of the sustaining of the exception of res judicata, we deny that exception.

### Factual and Procedural Background

The record indicates that Larry Bize, Sr. was arrested following a March 2008 incident at a bar he owned in Avoyelles Parish. Mr. Bize and his wife, Michelle R. Bize, retained Malcom Larvadain (Mr. Larvadain) to represent them in a suit by which they alleged that the Avoyelles Parish Sheriff's deputies involved in the arrest were liable to them for physical and mental damages resulting from the incident. That initial petition was filed in March 2009.

In September 2010, a first supplemental and amending petition was filed attempting to plead claims pursuant to 42 U.S.C. § 1983. The trial court granted a motion for summary judgment in July 2015 as to those latter claims on the basis of prescription and upon a finding that they did not relate to the original petition due to its lack of allegations in support of the § 1983 claims. The trial court also granted summary judgment on the basis of an absence of genuine issues of material fact, as the plaintiffs "failed to provide any evidence that they will be able to satisfy their

evidentiary burden regarding said claims at trial." Thus, the trial court dismissed all §

1983 claims.

The remaining issues proceeded to trial before Judge Kerry Spruill. During a

recess in the proceedings, Mr. and Mrs. Bize entered into a November 13, 2015

settlement agreement, whereby they would receive $50,000 over a twelve-month

period.[1] However, the matter was not dismissed at that point.

In April 2016, with the agreement confected, the defendants in the personal

injury suit filed a Motion to Enforce Settlement. While that motion was pending, Mr.

Bize discharged Mr. Larvadain and retained Nelson W. Cameron as reflected in a

May 2, 2016 Motion to Enroll and Withdraw as Counsel. Mr. Bize thereafter filed a

Motion to Recuse,[2] asserting that he had lacked capacity to enter into the settlement

agreement and that Judge Spruill was a potential witness at the forthcoming hearing

on the Motion to Enforce Settlement.[3] Judge William J. Bennett was assigned to

---

[1] The agreement, contained within the record, reflects the terms, in part, as follows:

> Defendant, Sheriff Doug Anderson, in his official capacity, agrees to pay the sum of $50,000.00 in full settlement of any and all claims asserted by Plaintiffs in the above numbered and entitled suit. Said sum to be paid in equal monthly payments of $4,166.67 for twelve months, the first payment of which will be made within 30 days of signing of this document. Defendant, Sheriff Doug Anderson, also agrees to pay Plaintiffs Clerk of Court costs incurred in this matter.

> Plaintiffs[ ] agree to dismiss all claims asserted in the suit as well as the currently pending appeal of the dismissal of the Civil Rights [sic].

[2] While it appears that both Mr. and Mrs. Bize were plaintiffs in the personal injury suit, Mr. Bize filed both the Motion to Enroll and Withdraw as Counsel and the Motion to Recuse in his name alone.

[3] Mr. Bize contended within the Motion to Recuse that:

> It was apparent from those present in the courtroom at the time including Judge Spruill that the Plaintiff Larry Bize was unable to proceed due to his emotional and mental state. Judge Spruill likely has knowledge of some of the progress of the negotiations which took place at the Avoyelles Parish Courthouse. A settlement agreement was signed by Plaintiff at the courthouse on November 15, 2015, however, Plaintiff Larry Bize, Sr., contends that he was deprived of reason and lacked capacity at the time.

consider the motion to recuse. Following a hearing, Judge Bennett denied the motion, explaining in his reasons for ruling that Judge Spruill was not a witness to Mr. Bize's alleged deterioration given the latter's testimony that he became distraught during settlement negotiations that occurred during a recess.[4]

Mr. Bize continued, asserting that "because Judge Spruill is a witness regarding the state of mind of Plaintiff at the time of the recess and settlement, Judge Spruill should be recused." *See* La.Code Civ.P. art. 151(A)(1).

[4] Judge Bennett further noted that Mr. Bize asserted that Judge Spruill "was presiding at the time of the testimony of Larry Bize, Sr. and that during said testimony Bize sustained a break-down which clearly indicated to Judge Kerry Spruill that Larry Bize, Sr. was not capable of making reasonable decisions." Judge Bennett continued, explaining:

> Due to the contention raised by plaintiff that Bize sustained a break down which clearly indicated to Judge Spruill that Bize was not capable of making reasonable decisions and therefore called a recess, this Court not only read the transcript of the proceeding but also listened to the audio tape of the proceeding. During his testimony Bize appeared to be extremely calm and assertive, talking in a normal pattern. It was remarkable to this Court that no emotion appeared from the voice of Bize. Shortly before the break a "sniffle" was noticed, however, Bize was still talking in a normal matter. All of a sudden Judge Spruill basically stated "gentlemen I hate to interrupt but I have to take a brief recess for five minutes." There was absolutely no indication that this recess was precipitated by any condition of Bize. It appeared that the recess was taken simply because the Judge had some type of issue that he had to address. This is normal procedure in the Judicial field. If the recess would have been necessitated by the condition of Bize a 5 minute limitation would be unusual.

> What is also striking to this Court is that Bize was not testifying about any serious issue. The testimony at the time of the recess concerned the retirement of the treating physician of Bize and the new doctor that Bize was being treated by.

> During the recess the parties continued to discuss settlement of the claim and reached a settlement. The settlement was reduced to writing and filed. The Trial was continued without date.

> During his testimony during Hearing, Larry Bize, Sr. confirmed that during the settlement negotiations his mental condition deteriorated. Larry Bize, Sr. confirms that Judge Kerry Spruill was not a witness to his condition during the negotiations. Larry Bize, Sr. confirmed that Judge Spruill was a witness to his emotional state during his testimony, which according to Judge Spruill, consisted of crying shortly before the recess. All evidence considered by this Court fails to reflect that the emotional state of Larry Bize, Sr. during his testimony was such that he lacked reason and understanding. Minor crying does not equate to less of a reason or understanding.

> In their opposition to the defendant's <u>Motion to Enforce Settlement Agreement</u>, Larry Bize, Sr. contends that certain events occurred during the settlement negotiations which were witnessed by a Dr. Nolan. At no point does Larry Bize, Sr. allege that Judge Kerry Spruill witnessed any of these matters during the settlement negotiations. Again, it is most important to point out that Judge Kerry

Afterwards, on September 8, 2016, Mr. and Mrs. Bize signed a formal Receipt and Release of All Claims. Therein, they acknowledged that, for the sum of $50,000, they released, acquitted, and discharged the officers named as defendants in the suit. In turn, the trial court granted the parties' Joint Motion to Dismiss and ordered, on November 15, 2016, that Mr. and Mrs. Bize's suit be dismissed as to all defendants.

Mr. and Mrs. Bize instituted the present matter, also in November 2016, by filing a Petition for Damages and Trial By Jury in Rapides Parish. The plaintiffs named Mr. Larvadain and his brother, Edward Larvadain, III, as defendants, as well as their purported partnership. The plaintiffs alleged that Mr. Larvadain committed various instances of legal malpractice in his representation of them in the initial matter, including: 1) failing to timely plead claims allegedly arising under 42 U.S.C. § 1983 and failing to timely pursue an appeal or writ on a determination that such claims had prescribed; 2) failing to file the matter in federal court; and 3) pleading causes of action against the defendants in their official capacities and not in their individual capacities. The plaintiffs additionally alleged that Mr. Larvadain "counseled Plaintiffs to enter into a settlement agreement dismissing the named Defendants with prejudice. Due to failures in the pleading as drafted and the filings and subsequent practice, the

---

Spruill witnessed the testimony of Larry Bize, Sr. and during this testimony, a recess was called. Insufficient proof was submitted to show that this recess was called due to Bize being unable to continue his testimony. However, the evidence confirms that during settlement negotiations Judge Kerry Spruill was not present and was not a witness.

The issue pending before the Court is whether or not the settlement agreement entered into on November 13, 2015 and reduced to writing should be enforced. Larry Bize, Sr. contends that due to his severe anxiety, duress and suicidal ideation, he was deprived of reason. This severe anxiety, duress and suicidal ideation did not occur during his testimony. A crying episode occurred as testified to by Judge Kerry Spruill and confirmed by Larry Bize, Sr. Whether or not Larry Bize, Sr. had the mental capability during the negotiation process and at the time of execution of the settlement agreement consists of facts and circumstances which were not witnessed by Judge Kerry Spruill. Therefore, clearly, Judge Kerry Spruill is not a witness to this proceeding and the request for Recusation be and is hereby DENIED.

settlement obtained was woefully inadequate." They continued, asserting that Mr. Larvadain "knew or should have known during the settlement negotiations that Larry Bize was under duress at the time and was not competent to proceed with a settlement." The plaintiffs alleged that they had suffered "loss of damages including but not limited to attorney fees, punitive damages and sufficient compensation for the losses sustained in the case filed in Avoyelles Parish district court."

The plaintiffs thereafter filed three amending petitions. By those petitions, the plaintiffs named Edward Larvadain, Jr. as an additional defendant, suggesting that he assisted in Mr. Larvadain's representation of them.[5] Among other factual assertions, the plaintiffs alleged legal malpractice in the failure to employ experts in the use of force or arrest and in economics; the failure to conduct sufficient and timely discovery; and in the failure to conduct a prompt prosecution of the matter. And, finally, the plaintiffs alleged that certain instances of purported malpractice were not known to them at the time of the occurrence. Rather, by the second and third amended petitions, the plaintiffs contended that Mr. Larvadain acted with an intent to conceal the purported malpractice, doing so by failing to inform them of, among other things, the summary judgment resulting in the dismissal of the 42 U.S.C. § 1983 claims. They alleged that they only became aware of such actions after examination of the Avoyelles Parish Court records in November 2016 and only after receipt of the file from Mr. Larvadain. The plaintiffs further asserted that the delivery of the file was not prompt. Those actions, the plaintiffs contended, reflected concealment and fraud per La.R.S. 9:5605(E).

---

[5] By supplemental petition, the plaintiffs also changed the name of the purported law partnership. As neither Edward Larvadain, Jr. nor the law partnership entity are parties to the judgment under review, we continue in the use of "the defendants" to refer to Mr. Larvadain and Edward Larvadain, III.

Before pleading, Mr. Larvadain and Edward Larvadian, III ("the defendants") responded to the initial petition with a Motion to Set Bond For Security For Costs, seeking a bond in the amount of $25,000, pursuant to La.R.S. 13:4522. The trial court granted the motion, ordering the posting of a bond by April 10, 2017. By the ruling, the trial court set for hearing the plaintiffs' motion and rule to show cause by which they prayed that La.R.S. 13:4522 be declared unconstitutional pursuant to La.Const. art. 1, § 2 (Due Process of Law); La.Const. art. 1, § 19 (Right to Judicial Review); and La.Const. art. 1, § 22 (Access to Courts).[6] Following that hearing, the trial court denied the plaintiffs' claim and entered judgment indicating that "the constitutionality of La.R.S. 13:4522 is hereby upheld." The trial court maintained its earlier order that the plaintiffs post a $25,000 bond, but modified the date for the posting to "two weeks after any ruling by the Louisiana Third Circuit Court of Appeal regarding this Judgment."

The defendants further filed various proceedings, including an Exception of Peremption, an Exception of Res Judicata, and a Motion for Summary Judgment on Estoppel. Following two hearings on the matters, the trial court denied the motion for summary judgment, but sustained the exception of peremption as well as the exception of res judicata. In sustaining the exception of res judicata, the trial court ordered that "all claims of plaintiffs Larry Bize, Sr. and Michelle R. Bize concerning the alleged lack of mental capacity of Larry Bize, Sr. when the plaintiffs settled the underlying lawsuit are hereby dismissed with prejudice."

The plaintiffs appeal, asserting that the trial court erred in: 1) requiring them to post bond pursuant to La.R.S. 13:4522, as it violates La.Const. art. 1, § 22 and the

---

[6] The plaintiffs also asserted that the statute violated La.Const. art. 3, § 12 (Prohibited Local and Special Laws). However, the plaintiffs do not address that ground on appeal. Therefore, it is not further discussed.

Due Process Clause of the U.S. Constitution; 2) requiring them to post bond when there was insufficient evidence to support the amount imposed; 3) granting the exception of preemption, as the record indicates that acts of malpractice occurred within the one-year period before the filing of suit, and other acts occurred within one year of discovery and within three years of the filing of suit; 4) not applying prescription upon the demonstration of fraudulent concealment; and in 5) granting the exception of res judicata when the parties to the prior judgment and the case at issue are not the same.

## Discussion

*Louisiana Revised Statutes 13:4522*

The plaintiffs first two assignments of error address the trial court's order that they post a bond for security and its determination "that the constitutionality of La.R.S. 13:4522 is hereby upheld." Titled "Defendant may demand security for costs[,]" the subject statute provides:

> The defendant before pleading in all cases may by motion demand and require the plaintiff or intervenor to give security for the cost in such case, and on failure to do so within the time fixed by the court such suit or intervention, as the case may be, shall be dismissed without prejudice. This section shall not apply to the Parish of Orleans and to cases brought in forma pauperis, nor to the state or any political subdivision thereof.

*Id.* The supreme court has explained that the requirement for the advance posting of security for costs "secures the payment of those expenses incurred by the defendant in defense of the suit which may be taxed as court costs and which the plaintiff may finally be condemned to pay." *Carter v. Phillips*, 337 So.2d 187, 188 (La.1976). We turn to consideration of the plaintiffs' related arguments.

<u>Access to the Courts</u>

We first examine the plaintiffs' constitutional claim. In addition to the defendants' arguments rebutting the plaintiffs' contention, the Attorney General of the State of Louisiana files an *amicus curiae* brief with this court,[7] arguing that La.R.S. 13:4522 maintains the plaintiffs' right of access to the courts.

As noted by the Attorney General, this court must first determine whether the constitutional issue presented by the plaintiffs in their brief is appropriately before this court. *See State v. Lanclos*, 07-0082 (La. 4/8/08), 980 So.2d 643. On this point, the supreme court has explained that:

> We have repeatedly and consistently held that courts should refrain from reaching or determining the constitutionality of legislation unless, in the context of a particular case, the resolution of the constitutional issue is essential to the decision of the case or controversy. *State v. Fleming*, 2001-2799 (La.6/21/02), 820 So.2d 467, 470; *Cat's Meow, Inc. v. City of New Orleans Through Dept. of Finance*, 98-0601 (La.10/20/98), 720 So.2d 1186, 1199; *Louisiana Associated Gen. Contractors, Inc. v. New Orleans Aviation Bd.*, 97-0752 (La.10/31/97), 701 So.2d 130, 132; *Cameron Parish Sch. Bd. v. Acands, Inc.*, 96-0895 (La.1/14/97), 687 So.2d 84, 87; *White v. West Carroll Hosp., Inc.*, 613 So.2d 150, 157 (La.1992). Further, our jurisprudence counsels that the practice of courts is "never to anticipate a question of constitutional law in advance of the necessity of deciding it." *Matherne v. Gray Ins. Co.*, 95-0975 (La.10/16/95), 661 So.2d 432, 434; *Communist Party of U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961) (citing *Liverpool, New York & Philadelphia S.S. Co. v. Commissioners*, 113 U.S. 33, 5 S.Ct. 352, 28 L.Ed. 899 (1885); *Arizona v. California*, 283 U.S. 423, 51 S.Ct. 522, 75 L.Ed. 1154 (1931). Courts should avoid constitutional rulings when the case can be disposed of on

---

[7] Louisiana Revised Statutes 13:4448 provides:

Prior to adjudicating the constitutionality of a statute of the state of Louisiana, the courts of appeal and the Supreme Court of Louisiana shall notify the attorney general of the proceeding and afford him an opportunity to be heard. The notice shall be made by certified mail. No judgment shall be rendered without compliance with the provisions of this Section; provided where the attorney general was not notified of the proceeding, the court shall hold adjudication of the case open pending notification of the attorney general as required herein.

non-constitutional grounds. *Blanchard v. State Through Parks and Recreation Commission*, 96-0053 (La.5/21/96), 673 So.2d 1000, 1002.

*Id.* at 647-48 (quoting *Ring v. State, Dep't of Transp. & Dev.*, 02-1367, pp. 4-5 (La. 1/14/03), 835 So.2d 423, 426-27).

In addressing this preliminary question, the Attorney General suggests that if it is determined that the trial court appropriately dismissed the plaintiffs' suit upon sustaining the defendants' exception, then resolution of the constitutional challenge may not otherwise be required and, therefore, should not be addressed. As we below find reversal of aspects of the judgment necessary, we continue with discussion of the constitutional claim. We do not find, however, that the breadth of the plaintiffs' argument as now presented to this court is preserved for review.

Rather, the supreme court has explained that "litigants must raise constitutional challenges in the trial court rather than in the appellate courts, and that the constitutional challenge must be specially pleaded and the grounds for the claim particularized." *Arrington v. Galen-Med, Inc.*, 06-2968, p. 3 (La. 2/2/07), 947 So.2d 727, 728-29. Such a requirement permits the parties to brief and argue the issues raised at a contradictory hearing and affords the opportunity for a full record for review. *Id.* (citing *Vallo v. Gayle Oil Co., Inc.* 94-1238 (La. 11/30/94), 646 So.2d 859). The supreme court continued, stating that:

> The requirement of specially pleading the unconstitutionality of a statute in pleadings implies that this notable issue will receive a contradictory hearing, wherein all parties will be afforded the opportunity to brief and argue the issue. *Cf.* LSA-C.C.P. arts. 929, 963, 966, 1038, 1871. The record of the proceeding could then be reviewed to determine whether the party attacking the statute sustained his or her burden of proof, and whether the trial court attempted to construe the statute so as to preserve its constitutionality. See *Moore v. Roemer*, 567 So.2d 75, 78 (La.1990); *Board of Directors of the Louisiana Recovery Dist. v. All Taxpayers, Property Owners and Citizens of the State of Louisiana*, 529 So.2d 384, 387-388 (La.1988).

*Id.* at 729 (quoting *Vallo*, 646 So.2d at 865).

In pertinent part, the plaintiffs specifically pleaded in the motion instituting their constitutional claim that La.R.S. 13:4522 violated La.Const. art. 1, § 2 (Due Process of Law); La.Const. art. 1, § 19 (Right to Judicial Review); and La.Const. art. 1, § 22 (Access to Courts). Yet, the motion's incorporated memorandum[8] did not particularize the ground arising under Section 2, failing to separately cite to that provision. And, to the extent it superficially cited Section 19, it did so within its discussion of access to the courts. The plaintiffs did, however, address and further particularize this latter ground, arising under Section 22 and the due process considerations contained therein. We make final note here that, in framing their assignments of error, the plaintiffs also assert that the La.R.S. 13:4522 as applied here violates "the First Amendment and Due Process Clause of the U.S. Constitution." *See* U.S. Const. amend. I and U.S. Const. amend. XIV. However, we again note those grounds were not raised by the plaintiffs' motion and were referenced in the

---

[8] The Attorney General points out that the plaintiffs' motion, alone, did not include particularization of the grounds cited. Review of the record indicates that further particularization is seen only in the attached memorandum. Importantly, a constitutional claim must be raised by a pleading, not a memorandum. *See Vallo*, 646 So.2d 859. The record further reflects, however, that in addition to the plaintiffs' motion listing several grounds of purported unconstitutionality, it referenced an attached memorandum. By that attachment, the plaintiffs provided further particularization, at least as to the ground advancing a violation of the right of access to the courts. The record reflects that the documents were simultaneously filed. In *State v. Hatton*, 07-2377 (La. 7/1/08), 985 So.2d 709, 713 n.6, the supreme court considered that the defendant raised and particularized a constitutional claim by a motion to quash which "included a separate heading titled 'Memorandum in Support.' The Motion to Quash and Memorandum in Support were filed, signed by defense counsel, and stamped as one document[.]" The supreme court explained that it, thus, "consider[ed] the Memorandum in Support as part of the Motion to Quash." *Id.* With *Hatton* as guidance, we consider the plaintiffs' access to the court discussion here, again noting that it is the sole ground that the plaintiffs' both pleaded in the motion and particularized in the memorandum.

To the extent that the supreme court has explained that the purpose of the specific pleading requirements are to ensure notice and an opportunity to create a record for review, we note that the trial court conducted a hearing on the plaintiffs' motion. Additionally, the defendants and the Attorney General were provided notice of the plaintiffs' constitutional claim and each filed a brief at the trial level in opposition thereto that included discussion of the plaintiffs' challenge arising under La.Const. art. 1, § 22. *See Arrington*, 947 So.2d 727.

memorandum only within the reporting of jurisprudence. Accordingly, we limit review to that ground raised in the motion and ultimately preserved for review.

Finding that the plaintiffs preserved for review the single ground of the constitutionality of La.R.S. 13:4522 in light of La.Const. art. 1, § 22, we turn to *de novo* review of the trial court's rejection of that constitutionality claim. *See City of New Orleans v. Clark*, 17-1453, p. 4 (La. 9/7/18), 251 So.3d 1047, 1051 ("The determination of the constitutionality of a statute presents a question of law, which is reviewed by this court *de novo*."). In doing so, we are mindful that statutes are presumed to be constitutional and that, in turn, it is the party challenging a statute's validity who must bear the burden of proving its unconstitutionality. *Id.* As "[a] facial constitutional challenge seeks more drastic relief than" those presented on an "as-applied" basis, "the movant in a facial challenge bears an especially heavy burden." *LaPointe v. Vermilion Parish Sch. Bd.*, 15-0432, p. 10 (La. 6/30/15), 173 So.3d 1152, 1159 (citing *U.S. v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095 (1987)). In such a challenge, the movant "must establish that no set of circumstances exists under which the statute would be valid, that is, that the law is unconstitutional in all its applications." *Id.* at 1159-60.

Titled "Access to Court[,]" La.Const. art. 1, § 22 provides: "All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights."

In lodging their constitutional claim, the plaintiffs observed in their memorandum to the trial court that, in *Michel v. Edmondson*, 218 So.2d 103 (La.App. 3 Cir. 1968), a panel of this court upheld the constitutionality of La.R.S. 13:4522. However, they noted both that *Michel* was rendered prior to the enactment of the 1974

11

Louisiana Constitution and that the *Michel* panel appeared to be addressing a facial constitutional challenge. The plaintiffs suggest that they alternatively lodged an "as-applied" challenge.

Reference to *Michel*, 218 So.2d 103, indicates that the plaintiff in that case filed suit for damages allegedly sustained to his crops due to flooding caused by the defendant's construction of a dam across a drainage canal. The defendant filed a motion for security for costs pursuant to La.R.S. 13:4522 based on the need to employ engineers, surveyors, and agricultural experts for his defense. The plaintiff, however, raised various constitutional concerns, including one arising under Article 1, § 6 of the 1921 Louisiana Constitution. Then titled "Open courts; legal remedies[,]" the provision indicated at the time of *Michel*, that:

> Section 6. All courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law and justice administered without denial, partiality or unreasonable delay.

Notwithstanding the plaintiff's assertion of unconstitutionality, the trial court in *Michel* ordered the plaintiff to post a $750 bond for costs. *Michel*, 218 So.2d 103. When the plaintiff failed to do so, the trial court dismissed the suit. The plaintiff appealed. *Id.*

On review, however, the panel rejected the plaintiff's claim that La.R.S. 13:4522 discriminated against civil suit plaintiffs as they, distinct from defendants, could be required to furnish security for costs. *Michel*, 218 So.2d 103. The panel explained:

> In Grinage et al. v. Times-Democrat Publishing Company, 107 La. 121, 31 So. 682 (1902), the constitutionality of Act 136 of 1880, Section 4 was again attacked and the court held:
>
> > "The constitutional declaration that the courts shall be open, and every person for injury done him in his rights, lands,

12

goods, person or reputation shall have adequate remedy by due process of law, etc. (article 6, Const. 1898) is not to be understood or construed as taking from the legislature the power to prescribe reasonable rules and regulations relative to the costs incurred in litigation. Succession of Grover, 49 La.Ann. 1050, 1051, 22 So. 313. When a person is impleaded in the courts his right to make defense thereto arises and he, necessarily, in many cases, incurs expense. While a plaintiff is primarily bound for the costs of a suit he institutes, it is not always true that he is financially able to respond. A defendant may make large outlays in vindicating his position, and may successfully vindicate it, and yet at the end of the suit, with a judgment discharging him, may be unable to recoup his expenditures . Therefore it is, that the requirement of a bond for costs has always been sustained."

In the Federal Courts security for costs is not expressly covered by the Federal Rules of Civil Procedure. The Federal District Courts require such security under their general rule-making power, Federal Rule 83. Usually, they follow the state court practice. See the general discussion in Barron & Holtzoff, Sections 1198 and 1711. We find no Federal case holding security for costs unconstitutional as denying either due process or equal protection of the laws.

The equal protection of law guarantees in our Federal Constitution require generally that all citizens similarly situated be accorded the same rights in the prosecution of civil suits. Classifications of citizens who are similarly situated may be established by the legislature, so long as such classifications are based on reasonable grounds. Roper v. Brooks, 201 La. 135, 9 So.2d 485 (1942); 16A C.J.S. Verbo Constitutional Law §§ 502-503 and 557-566, pp. 296-300, and 502-536.

Under these general principles, we think the reasoning of the court in the Grinage case quoted above, furnishes valid grounds to treat plaintiffs as a class in civil actions different from defendants under the state statute authorizing security for costs.

We find at least one of our sister states has considered a similar problem. In Columbia Water Power Company v. Nunamaker, 73 S.C. 550, 53 S.E. 996, the Supreme Court of South Carolina held that a statute requiring a bond of the plaintiff before granting an injunction, while no such bond was required of the defendant, does not deny to plaintiff the equal protection of the laws.

*Id.* at 105. While the plaintiffs point out that *Michel* was decided under the prior

constitution, comparison of Article 1, § 6 of the 1921 Louisiana Constitution to

La.Const. art. 1, § 22 reveals substantively equivalent language. Further, the version of La.R.S. 13:4522 under review in *Michel* has not been amended since that time.

Although they acknowledge *Michel*, the plaintiffs argue that the 1968 opinion is no longer authoritative. They instead assert that *Detraz v. Fontana*, 416 So.2d 1291 (La.1982) is reflective of a contemporary view of La.Const. art. 1, § 22 and is similar to the present case. In *Detraz*, the defendants filed a rule to require the plaintiffs in that case to furnish a bond for attorney fees pursuant to La.R.S. 42:261(E) as it existed at that time.[9] The plaintiffs opposed the rule on the basis of state and federal equal protection. The trial court ordered the posting of a $15,000 bond and ultimately dismissed the suit when the plaintiffs failed to post the bond.

After the appellate panel upheld the constitutionality of the statute, the supreme court granted the writ application in order to consider the constitutional question presented, i.e., the equal protection mandate of U.S. Const. amend. XIV and La.Const. art. 1, § 22. *Detraz*, 416 So.2d 1291. The supreme court observed that the statute treated litigants opposing governmental defendants differently than those opposing private defendants. It noted that only the first class of litigants would suffer the

---

[9] The supreme court reported that La.R.S. 42:261(E) provided at that time as follows:

"Any party who files suit against any duly elected or appointed public official of this state of or any of its agencies or political subdivisions for any matter arising out of the performance of the duties of his office other than matters pertaining to the collection and payment of taxes and those cases where the plaintiff is seeking to compel the defendant to comply with and apply the laws of this state relative to the registration of voters, and who is unsuccessful in his demands, shall be liable to said public official for all attorneys fees incurred by said public official in the defense of said lawsuit or lawsuits, which attorneys fees shall be fixed by the court.

The defendant public official shall have the right, by rule, to require the plaintiff to furnish bond as in the case of bond for costs, to cover such attorneys fees before proceeding with the trial of said cause."

*Detraz*, 416 So.2d at 1292.

burden of the bond for attorney fees. *Id.* It found no justification for that disparate treatment and, thus, the statute was found to violate both the state and federal constitutions. Following that determination as to equal protection, the supreme court further determined that the statute deprived the plaintiff of due process and denied open access to the courts. *Id.* (citing U.S. Const. amend. V; U.S. Const. amend. XIV; La.Const. art. 1, § 2; La.Const. art. 1, § 22). This reasoning, the plaintiffs suggest, should be applied in the present case to find La.R.S. 13:4522 similarly unconstitutional.

As urged by both the defendants and the Attorney General in opposition, however, reference to *Detraz*, 416 So.2d 1291 in full undermines the plaintiffs' comparison. Rather, the supreme court therein discussed at length the illegitimate "motivating force" in the enactment of La.R.S. 42:261(E) in 1960. *Id.* at 1292. Namely, the supreme court reviewed legislatively-endorsed materials from the time period that revealed "contempt of state leaders for the decision of the United States Supreme Court in *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, [ ] (1954)." *Id.* at 1293 (footnote omitted). The supreme court remarked that although the specific legislative history was unavailable, the context in which it was passed indicated that it too would further the segregationist purpose "by making it extremely costly, if not prohibitive, for minority groups or individuals to bring suit against any public official (school board member, police officer, police juror) for the redress of grievances suffered because of race." *Id.* at 1293-94 (footnote omitted).

The supreme court acknowledged that "[w]ide discretion is normally afforded legislative classifications" and that "legislative judgment will be upheld 'if any state of facts reasonably may be conceived to justify it.'" *Detraz*, 416 So.2d at 1294 (quoting *McGowan v. State of Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105

15

(1961)). It further explained, however, that racial classifications such as the one before it are "suspect and subject to the 'most rigid scrutiny.'" *Id.* (quoting *Loving v. Virginia*, 388 U.S. 1, 11, 87 S.Ct. 1817, 1823 (1967)). Such has not been alleged to be the context of the statute in the present case. Further recall that the plaintiffs have not preserved an equal protection claim.

While the supreme court in *Detraz* also found that the statute at issue in that case violated concepts of due process and access to the courts, it is critical to recognize that the statute under review by the supreme court afforded neither an opportunity to be heard nor did it include an exception for litigants qualified as paupers.[10] By contrast, La.R.S. 13:4522 includes an express exception for those qualified as paupers. *Carter*, 337 So.2d 187; *Whitson v. American Ice Co.*, 164 La. 283, 113 So. 849 (1927). In fact, and as it relates to the plaintiffs' suggestion that they have raised an as-applied challenge, we note that the record demonstrates that the plaintiffs have not qualified as paupers, but have instead received settlement proceeds and, as developed at trial, the plaintiffs have multiple sources of income. They were also afforded a hearing at which they were able to oppose the necessity and the size of the bond (as well as a separate hearing for consideration of the instant constitutional challenge). The record does not otherwise demonstrate, other than a bare assertion, any way in which the application of La.R.S. 13:4522 is an economic hardship or is

---

[10] The plaintiffs also note that the supreme court's due process and access to the court analysis was based, in part, on *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780 (1971) (wherein the Supreme Court concluded that a statute requiring prepayment of court fees and costs violated due process and access to the courts for those who could not afford to pay). *Detraz*, 416 So.2d 1291. Reference to *Boddie*, however, again reveals that the subject Connecticut statute contained no provision excepting paupers from its requirements.

otherwise violative of the plaintiffs' right of access to the courts as guaranteed by La.Const. art. 1, § 22.[11]

Similarly, we find no merit in the plaintiffs' suggestion that the analysis in *Michel*, 218 So.2d 103, is now antiquated. Instead, the supreme court has explained that "the legislature is free to allocate access to the judicial machinery in any system or classification which is not totally arbitrary." *Moore v. RLCC Tech.*, *Inc.*, 95-2621, p. 16 (La. 2/28/96), 668 So.2d 1135, 1144 (quoting *Bazley v. Tortorich*, 397 So.2d 475, 485 (La.1981)). Finding no indication of such unreasonableness in the limitations attendant to the bond requirement provided by La.R.S. 13:4522, we find no merit to the plaintiffs' constitutional claim.

Evidentiary Support for the Bond

The plaintiffs alternatively assert that the defendants failed to demonstrate sufficient need for the $25,000 bond. They contend that, rather than presenting specific evidence of the necessity of the bond, the defendants relied upon the bare allegations of their motion to set the bond. This type of reliance, the plaintiffs suggest, is insufficient for the type of bond provided by La.R.S. 13:4522.

In *Carter*, 337 So.2d at 189, the supreme court examined a trial court's bond order and stated that: "We agree that it is within the discretion of the trial judge to determine whether the showing required may be made by the allegations in the motion, supporting affidavits, the arguments of counsel at the hearing, introduction of evidence, or in any other manner which the trial judge deems appropriate." Under the facts of the case before it, however, the supreme court annulled the order, explaining that:

---

[11] We further point out that the trial court fashioned the bond order so as to ensure the plaintiffs' ability to obtain review, fixing the deadline for the posting of the bond "two weeks after any ruling by the Louisiana Third Circuit Court of Appeal regarding this Judgment."

[W]e feel that the trial judge abused his discretion here in accepting as a showing the allegations in the motion and perhaps argument of counsel. There is no indication in the record that the trial judge exercised his discretion "with the regard for the *actual necessity* for a bond and for the interest or motive of the party demanding it." (Emphasis added). *Whitson v. American Ice Co.*, 113 So. 849, 851. We are not convinced by the bare pleadings that the defendant needed the testimony of five expert witnesses in order to properly defend his suit. Nor is it clear why the defendant must take the depositions of the three doctors from Alexandria rather than subpoenaing them as witnesses at the trial. We do not mean to suggest that the arguments of counsel may *never* suffice as a showing. However, in this case, the arguments made at the hearing were not transcribed and made part of the record, and we cannot presume on review that they were adequate.

*Id.* at 189.

Following review, we find no abuse of discretion in the trial court's determinations that a bond was appropriate in this matter. Distinct from *Carter*, the record in this case contains the transcript of the hearing conducted on the Motion to Set Bond for Security for Cost. Instead, the record reveals a substantially similar scenario to that presented in *Clarkston v. Funderburk*, 16-681 (La.App. 3 Cir. 2/1/17), 211 So.3d 509, *writ denied*, 17-0403 (La. 4/13/17), 218 So.3d 631. As here, the plaintiff in *Clarkston* brought a legal malpractice claim against the defendant, who, in turn, sought a bond for costs. The defense in *Clarkston* asserted at the hearing on the bond that it would be required to retain various experts in preparation of its case, including those in legal malpractice, tenure law (the subject matter of the underlying representation), and economics. A panel of this court affirmed the $10,000 bond ordered by the trial court and ultimately upheld the trial court's dismissal of the suit upon the plaintiff's failure to post the bond. *Id.*

In doing so, the *Clarkston* panel referenced supreme court jurisprudence discussing the role of expert testimony in legal malpractice matters as well as the necessity of proving that any such negligence caused the alleged injuries. *Clarkston*,

18

211 So.3d 509 (citing *MB Indus., LLC v. CNA Ins. Co.*, 11-0303 (La. 10/25/11), 74 So.3d 1173).[12] The panel explained that:

> Regarding the showing of necessity for posting bond, the supreme court in *Carter* agreed that it was "within the discretion of the trial judge to determine whether the showing required may be made by the allegations in the motion, supporting affidavits, the arguments of counsel at the hearing, introduction of evidence, or in any other manner which the trial judge deems appropriate." *Id*. at 189. In *Carter*, the court found an abuse of discretion where the trial court had granted a doctor's request for bond to cover the depositions of five medical experts. Such is not the case here, where [the defendant] reasonably requested a bond to cover possibly three experts from three different disciplines: legal standard of care, teacher tenure and wrongful discharge, and possibly an economist to evaluate loss of earnings.
>
> Ms. Clarkston has cited various cases including *Watkins v. Sheppard*, 278 So.2d 890 (La.App. 1 Cir. 1973), where the courts found that no expert was required for litigating "obvious" acts of negligence. Here, however, the issues are more complex, as our brethren of the fourth circuit comprehensively stated almost thirty years ago:
>
>> The [plaintiffs] argue that the trial court is familiar with standards of care by attorneys in the local community and, therefore, expert testimony is not necessary in this case. We do not agree. The Supreme Court, in dicta, has indicated that it would find legal malpractice in the absence of expert testimony when an attorney ignores an "obvious" legal problem. *See Ramp*, 269 So.2d at 244. The First Circuit also has indicated that there may be some cases in which the trial court's own knowledge of the standards of care by an attorney in the local community may substitute for expert testimony. *See Watkins v. Sheppard*, 278 So.2d 890, 892 (La.App. 1st Cir.1973) and *Muse v. St. Paul Fire and Marine Ins. Co.*, 328 So.2d 698, 702 (La.App. 1st Cir.1976) (following *Watkins*). However, neither *Ramp*, *Watkins*, nor *Muse* supports the proposition that expert testimony is never required in any legal malpractice case. With the complexity and diversity of contemporary law, litigation, and legal practice, it should not be surprising to find legal malpractice cases in which expert testimony as to the standard of care is essential. This is such a case.

---

[12] Notably, in *MB Indus.*, 74 So.3d at 1184, the supreme court explained that "[t]ypically, a plaintiff will retain an expert witness both to establish the standard of care for prudent attorneys in the relevant locality and to show the defendant's actions fell below the standard of care." It further explained that, in the matter before it, "[w]ithout the assistance of an expert, a lay jury would have no basis for deciding whether the decision to call a particular witness or introduce a certain document was within the standard for a reasonable competent attorney …." *Id.* at 1186.

> *Houillon v. Powers and Nass*, 530 So.2d 680, 682 (La.App. 4 Cir. 1988). The cases cited in *Houillon* above are among those cited by Ms. Clarkston here.

*Id.* at 515 (second alteration in original).

The application of those principles in the present case again supports the trial court's order of the bond. The defendants here referenced the complexity and multi-faceted nature of the causes of action lodged by the plaintiffs. By their memorandum, the defendants noted the need for experts related to Mr. Bize's mental state and purported damages in the underlying suit as well as those who could testify as to matters of standards of legal representation. The defendants estimated a $300 hourly rate for those experts. Additionally, the defendants suggested that deposition and subpoena expenses associated with numerous fact witnesses would be incurred. Finally, we note too, that the trial court initially set the $25,000 bond in March 2017. The plaintiffs have since amended the petition and included additional allegations of malpractice. Given those circumstances, we find no abuse of discretion in the trial court's order as it related to the necessity of the bond pursuant to La.R.S. 13:4522.

Neither do we find merit in the plaintiffs' suggestion that the setting of bond at $25,000 was excessive. The plaintiffs assert in their brief that "the Defendants illogically seem to argue that the underlying case which has already been litigated and partially tried would militate in favor [of] imposing a bond on Plaintiffs for court costs, expert trial testimony, fact witness depositions, and fact witness testimony." Dismissing the defendants' contention, the plaintiffs instead suggest that due to the presence of "a complete record of the underlying case, up through and including trial, expenses of the Defendants are therefore minimized, not maximized." By way of example, the plaintiffs point out that "Plaintiff[s'] answers to interrogatories in this case concerning witnesses refers to the underlying case's answers to interrogatories

20

and other case file documents." The plaintiffs continue, asserting that "no one is in a better position to know whether the alleged undue influence was exerted than the accused attorney Defendants and the Plaintiffs." And, to the extent Mr. Bize's mental state is at issue, the plaintiffs correspondingly contend that "no one is [in] a better position to know his mental state than the parties and those experts employed by plaintiffs and defendants in the underlying case. Defendants have possession of deposition transcripts of Mr. Bize's treating physician and expert." The plaintiffs suggest that the defendants "were intimately familiar with [Mr.] Bize's mental state by their representation of him."

This assertion, however, ignores the fact that the plaintiffs have instituted a wholly new cause of action in legal malpractice, one involving entirely different considerations than those encapsulated in the records of the underlying proceeding. The defendants cannot be expected to forego the security envisioned by La.R.S. 13:4522 upon the suggestion of those now adverse to them. This is apparent given the above discussion regarding the role of expert testimony in legal malpractice claims. *See MB Indus.*, 74 So.3d 1173; *Clarkston*, 211 So.3d 509.

This assignment lacks merit.

*Exception of Peremption*

By their next two assignments of error, the plaintiffs question the trial court's determination that their malpractice claim was perempted. In the defendants' exception of peremption, they noted that the plaintiffs cited various instances of alleged malpractice throughout the defendants' representation of them in the underlying litigation arising from the 2008 altercation. The final act of alleged malpractice occurred in relation to the plaintiffs' settlement of that underlying matter on November 13, 2015. The defendants suggested in their exception, however, that

21

the suit in this matter was not filed until November 16, 2016.[13] Although the trial

court ultimately sustained the exception of peremption, it did so without reference to

individual allegations of malpractice and without issuing reasons for ruling. By these

assignments, the plaintiffs challenge that ruling and suggest that the record

demonstrates that suit was filed within one year of the discovery of the majority of the

allegations of malpractice (but within three years of their occurrence). The plaintiffs

also allege that suit was filed within one year of the allegation of malpractice

regarding the entry of settlement at the time of Mr. Bize's alleged mental incapacity.

Turning to review of the claim, we first note that the time limitations for filing a

legal malpractice claim are set forth in La.R.S. 9:5605, which provides, in pertinent

part, that:

> (A) No action for damages against any attorney at law duly
> admitted to practice in this state, any partnership of such attorneys at law,
> or any professional corporation, company, organization, association,
> enterprise, or other commercial business or professional combination
> authorized by the laws of this state to engage in the practice of law,
> whether based upon tort, or breach of contract, or otherwise, arising out
> of an engagement to provide legal services shall be brought unless filed
> in a court of competent jurisdiction and proper venue within one year
> from the date of the alleged act, omission, or neglect, or within one year
> from the date that the alleged act, omission, or neglect is discovered or
> should have been discovered; however, even as to actions filed within
> one year from the date of such discovery, in all events such actions shall
> be filed at the latest within three years from the date of the alleged act,
> omission, or neglect.

Paragraph B further explains that: "The one-year and three-year periods of limitation

provided in Subsection A of this Section are peremptive periods within the meaning of

---

[13] On page 4 of their appellate brief, the defendants again state that the petition was filed on
November 16, 2016, but acknowledge on page 28 thereof, that the appellate record reflects a
facsimile filing on November 14, 2016. They repeat acknowledgement of that purported facsimile
filing date in subsequent portions of their brief. We below address the factual issues surrounding the
effectiveness of the facsimile filing per La.R.S. 13:850.

Civil Code Article 3458[14] and, in accordance with Civil Code Article 3461,[15] may not be renounced, interrupted, or suspended." Significantly, La.R.S. 9:5605(E) provides that: "The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953." On this latter point, La.Civ.Code art. 1953 explains that: "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."

Albeit by the final amending petitions, the plaintiff raised allegations of fraud in contending that the defendants made an effort to conceal the alleged acts of malpractice. In particular, the plaintiffs asserted that the defendants failed to inform them of an alleged failure to make federal claims in the underlying litigation, failed to inform them of the dismissal of the federal claims to the extent they were alleged, failed to apprise them of appellate rights associated with that dismissal, and failed to timely deliver the entire contents of the client file upon demand. Given those allegations of concealment, it appears that as a point of starting, the plaintiffs made an initial showing that their claims were timely filed and, thus, the burden of proving peremption was with the defendants. *See Lomont v. Bennett*, 14-2483 (La. 6/30/15), 172 So.3d 620.

On review, we find that the defendants did so with the majority of claims related to the unsuccessful federal claims brought in the underlying level. On this point, Mr. Larvadain testified extensively at the hearing on the exception of

---

[14] Defining peremption, La.Civ.Code art. 3458 provides that: "Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period."

[15] Louisiana Civil Code Article 3461 provides that: "Peremption may not be renounced, interrupted, or suspended."

peremption, detailing his communications with the plaintiffs regarding the conduct of the underlying litigation. He described the plaintiffs' active involvement in the underlying litigation and further explained that he extensively informed Mr. Bize of decisional points now complained of by the plaintiffs. Mr. Larvadain specifically and repeatedly denied an intent to conceal, mislead, or defraud. Further, and with respect to the delivery of the plaintiffs' client file at the time of demand, Mr. Larvadain both testified as to his attempts to make that file available and submitted documentary evidence indicating an attempt to facilitate that transfer with the plaintiffs' counsel. Certainly, Mr. Bize testified otherwise, denying Mr. Larvadain's communications of litigation developments.

Given those starkly opposed accounts, the trial court clearly accepted Mr. Larvadain's account of disclosure. That credibility determination is patent in the trial court's rejection of the plaintiffs' claim of the applicability of the principles of prescription (due to their claim of discovery of the alleged malpractice only after delivery of the client file). That determination of contemporaneous knowledge on the part of the plaintiffs' further undermines the plaintiffs' suggestion that their claim was suspended during a period of continuous representation. *See Lomont*, 172 So.3d 620 (wherein the supreme court explained that, although the contra non valentem application of the continuous representation rule may not interrupt or suspend the peremptive periods of La.R.S. 9:5605, such an application may be warranted in the event that the one-year prescriptive period is found applicable).

On review, we are mindful that when, as here, evidence is introduced at the hearing on an exception of peremption, the trial court is not bound to accept a plaintiff's allegations as true. *Lomont*, 172 So.3d 620. Further, a trial court's findings of fact must be considered on appeal pursuant to the manifest error, clearly wrong

24

standard of review. *Id.* Following review of the record, we find no such error as to the majority of the plaintiffs' claims.

The allegation of malpractice surrounding Mr. Bize's capacity to enter into the settlement on November 13, 2015 is not as clear however, nor is the trial court's ruling thereon. On this claim, the plaintiffs alleged that the defendants encouraged the November 13, 2015 settlement at a time when Mr. Bize's purported mental incapacity should have been apparent. Their allegations of lack of knowledge and allegations of "fraud" do not reach that specific allegation.[16] The claims of fraud and applicability of La.R.S. 9:5606(E) instead relate to the earlier aspects of the representation.

---

[16] For instance, by their third amended petition, the plaintiffs alleged as follows:

"IV.

On or about November 13, 2015, after several days of trial, Malcolm Larvadain counseled Plaintiffs to entered into a settlement agreement dismissing the named Defendants with prejudice. Malcolm Larvadain informed the Plaintiffs that the Judge said they had to settle and if no settlement were reached, he would dismiss the case. Due to failures in the pleadings as drafted, amendments and the filings and subsequent practice in not attempting to amend the petition to add claims under 42 USC 1983, or to address these claims with the Court and Defendants during negotiation, or take other action to remove the suit to federal court, the settlement obtained was woefully inadequate. Edward Larvadain, Jr. had on at least one previous occasion counseled Mr. Bize to settle his case.

"V.

Malcolm Larvadain knew or should have known during the settlement negotiations that Larry Bize was under duress at the time, lacked reason and was not competent to proceed with a settlement. In addition, Larvadain coaxed the Plaintiffs into a settlement by leading them to believe and misleading them that there was no other choice. Larvadain committed violations of the Code of Professional Conduct in so doing. Specifically, he violated Rules 1.4: Communication and 4.1: Truthfulness in Statements to Others. Larvadain stated to Plaintiffs that the presiding Judge said they had to settle and had no choice. This was not true. Larvadain also violated Rule 1.14, Client with Diminished Capacity. Malcolm Larvadain understood that Mr. Bize's reasoning and capacity was diminished and thus he should have provided a continuance or longer recess to further evaluate Mr. Bize's capacity or sought the assistance of Dr. Noland who was present. Malcolm Larvadain failed to take action to protect his client and this failure resulted in a lower settlement.

"VI.

As a result of *the aforementioned acts of legal malpractice which were below the applicable standard of care*, Plaintiffs suffered loss of damages including but not

25

The record, however, indicates that the facsimile filing bears the Clerk of Court's stamp of November 14, 2016, and the regular standard filing bears the Clerk of Court's stamp of November 16, 2016. *See* La.Code Civ.P. art. 253;[17] La.R.S. 13:850.[18] While even that facsimile filing date ostensibly exceeds the one-year

limited to attorney fees, punitive damages, lost earning capacity, lost wages and sufficient compensation for the losses sustained in the case filed in Avoyelles Parish district court. Mr. Bize was disabled as a result of the force used by deputies. He had to take early retirement.

(Emphasis added.)

Only by the subsequent paragraph addressing Mr. Larvadain's post-representation actions, Paragraph VII, did the plaintiffs allege that Mr. Larvadain "with an intent to conceal malpractice committed *the following acts …*" (Emphasis added.) The five enumerated acts that followed do not include issues surrounding Mr. Bize's alleged diminished reasoning and capacity.

[17] Louisiana Code of Civil Procedure Article 253 provides, in pertinent part:

A. All pleadings or documents to be filed in an action or proceeding instituted or pending in a court, and all exhibits introduced in evidence, shall be delivered to the clerk of the court for such purpose. The clerk shall endorse thereon the fact and date of filing and shall retain possession thereof for inclusion in the record, or in the files of his office, as required by law. The endorsement of the fact and date of filing shall be made upon receipt of the pleadings or documents by the clerk and shall be made without regard to whether there are orders in connection therewith to be signed by the court.

B. The filings as provided in Paragraph A of this Article and all other provisions of this Chapter, may be transmitted electronically in accordance with a system established by a clerk of court. When a clerk of court establishes such a system, he shall adopt and implement procedures for the electronic filing and storage of any pleading, document, or exhibit. The official record shall be the electronic record. A pleading or document filed electronically is deemed filed on the date and time stated on the confirmation of electronic filing sent from the clerk of court. Public access to electronically filed pleadings and documents shall be in accordance with the rules governing access to written filings.

C. A judge or justice presiding over a court in this state may sign a court order, notice, official court document, and other writings required to be executed in connection with court proceedings, by use of an electronic signature as defined by R.S. 9:2602. The various courts shall provide by court rule for the method of electronic signature to be used and to ensure the authenticity of the electronic signature.

[18] With regard to facsimile filing, La.R.S. 13:850 provides, in pertinent part:

A. Any document in a civil action may be filed with the clerk of court by facsimile transmission. All clerks of court shall make available for their use equipment to accommodate facsimile filing in civil actions. Filing shall be deemed complete at the time the facsimile transmission is received by the clerk of court. No later than on the first business day after receiving a facsimile filing, the clerk of court

peremptive period related to the purported malpractice of November 13, 2015, the

plaintiffs assert that the final day of the peremptive period fell on a weekend and, thus,

would not be included in the computation of time. *See* La.Code Civ.P. art. 5059.[19]

Notwithstanding the fact that the record includes both the facsimile filing and the

shall transmit to the filing party via facsimile a confirmation of receipt and include a statement of the fees for the facsimile filing and filing of the original document. The facsimile filing fee and transmission fee are incurred upon receipt of the facsimile filing by the clerk of court and payable as provided in Subsection B of this Section. The facsimile filing shall have the same force and effect as filing the original document, if the filing party complies with Subsection B of this Section.

    B. Within seven days, exclusive of legal holidays, after the clerk of court receives the facsimile filing, all of the following shall be delivered to the clerk of court:

    (1) The original document identical to the facsimile filing in number of pages and in content of each page including any attachments, exhibits, and orders. A document not identical to the facsimile filing or which includes pages not included in the facsimile filing shall not be considered the original document.

    (2) The fees for the facsimile filing and filing of the original document stated on the confirmation of receipt, if any.

    (3) A transmission fee of five dollars.

    C. If the filing party fails to comply with any of the requirements of Subsection B of this Section, the facsimile filing shall have no force or effect. The various district courts may provide by court rule for other matters related to filings by facsimile transmission.

[19] Louisiana Code of Civil Procedure Article 5059 provides, in pertinent part:

    A. In computing a period of time allowed or prescribed by law or by order of court, the date of the act, event, or default after which the period begins to run is not to be included. The last day of the period is to be included, unless it is a legal holiday, in which event the period runs until the end of the next day which is not a legal holiday.

    B. A half-holiday is considered as a legal holiday. A legal holiday is to be included in the computation of a period of time allowed or prescribed, except when:

    (1) It is expressly excluded;

    (2) It would otherwise be the last day of the period; or

    (3) The period is less than seven days.

    C. (1) A legal holiday shall be excluded in the computation of a period of time allowed or prescribed to seek rehearing, reconsideration, or judicial review or appeal of a decision or order by an agency in the executive branch of state government.

filing by delivery of the document, the record includes no indication that the trial court considered whether the facsimile filing was effective. Neither does it reveal consideration of the evidence the plaintiffs submitted in support of the facsimile filing.[20] Significantly, La.R.S. 13:850(C) provides that, in the event a party fails to comply with the facsimile filing requirements, "the facsimile filing shall have no force or effect." This burden of proving the satisfaction of the requirements is on the sender. *See Hunter v. Morton's Seafood Rest. & Catering*, 08-1667 (La. 3/17/09), 6 So.3d 152.

Instead, the trial court merely granted the exception of peremption and was silent on any single allegation of malpractice, including the allegation surrounding diminished capacity at the time of the settlement, a claim that we have identified existed outside of the allegation of fraud and concealment. The trial court spoke to Mr. Bize's mental capacity and the allegation of malpractice related thereto in its ruling on the exception of res judicata, a ruling we find it necessary to reverse below. Given that ruling, it is unclear whether the trial court has addressed the exception of peremption as it relates to the allegation of malpractice relating to the entry of settlement and whether it has made a factual finding regarding the date of the filing of the petition. We thus find it necessary to reverse the trial court's judgment sustaining of the exception of peremption on this final, non-fraud based allegation of malpractice, i.e., that related to the entry of settlement in light of the allegation of mental incapacity. We below remand for the trial court's further consideration of the exception of peremption on that single cause of action. *See Hunter*, 6 So.3d 152

---

[20] The record indicates that the plaintiffs attached certain documents in opposition to the exception of peremption, including counsel's statement of account from the Clerk of Court and a cover letter to that Office purporting to forward the petition "Via Fax and U.S. Mail[.]" However, the attachments include no supporting or interpretive documents surrounding those attachments.

(wherein the supreme court remanded an unresolved issue of the effectiveness of a facsimile filing when the trial court made no such factual finding).

*Exception of Res Judicata*

Finally, we turn to the plaintiffs' assignment of error addressing the trial court's sustaining of the defendants' exception of res judicata. By the exception, the defendants observed that a portion of the plaintiffs' claim against them involved an allegation that Mr. Bize lacked mental capacity to enter into the settlement during trial of the underlying lawsuit. This issue of mental capacity, the defendants contended, was resolved by the trial court's ruling on a motion to recuse whereby Judge Bennett considered the proceedings below in ultimately determining that Judge Spruill would not be a witness in further proceedings. The defendants noted that, in doing so, Judge Bennett made certain findings regarding Mr. Bize's mental capacity. That determination, the defendants asserted, precluded relitigation of that capacity in pursuit of the plaintiffs' claim that the defendants committed malpractice in facilitating the settlement when Mr. Bize lacked mental capacity to enter into a contract. The trial court found merit in that contention and sustained the exception of res judicata, thereby ordering that "all claims of plaintiffs … concerning the alleged lack of mental capacity of Larry Bize Sr. when the plaintiffs settled the underlying lawsuit are hereby dismissed with prejudice." The plaintiffs challenge that determination here, pointing out that, although they were parties to the underlying litigation, the defendants were not.

Under La.R.S. 13:4231, res judicata is comprised of the following:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:

(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

Direct reference to La.R.S. 13:4231 reveals merit in the plaintiffs' opposition to the exception. As noted by the plaintiffs, the defendants to the litigation in which the allegedly determinative judgment arose were the Avoyelles Parish Sheriff and certain deputies of that office. But, and although the plaintiffs are the same in the present matter, the defendants are not. By its introductory wording, La.R.S. 13:4231 provides that "a valid and final judgment is conclusive *between the same parties* …[.]" (Emphasis added.) It is simply inapplicable here.[21]

Accordingly, we find manifest error in the trial court's sustaining of the exception of res judicata. *See Haybeych v. JPMorgan Chase Bank, N.A.*, 15-90, p. 3 (La.App. 3 Cir. 11/4/15), 180 So.3d 491, 494 "When evidence is introduced by the parties in support of an exception of res judicata, the appropriate standard of appellate review is manifest error."). We below reverse that ruling and enter a denial of the

---

[21] It is further worth noting that defendants urged in the exception of res judicata that, in denying the motion to recuse, Judge Bennett explained that the evidence "fails to reflect that the emotional state of Larry Bize, Sr. during his testimony was such that he lacked reason and understanding." As seen within the larger context recited in the factual background, however, Judge Bennett's remark was directed to the issue of whether Judge Spruill witnessed Mr. Bize's alleged mental incapacity. Judge Bennett concluded that he did not, observing that Mr. Bize testified at the recusal hearing that his mental capacity declined during the settlement negotiations, rather than before Judge Spruill. Judge Bennett did not address Mr. Bize's mental capacity as it related to the validity of the settlement.

exception of res judicata and, as explained above, remand for further proceedings on the remaining issue.

## DECREE

For the foregoing reasons, the trial court's denial of the Motion to Oppose Setting of Bond for Security of Costs, Rule to Show Cause & Declare Statu[t]e Unconstitutional is affirmed. The trial court's judgment sustaining the Exception of Peremption is reversed as to the Petition's allegation of malpractice related to the mental capacity of the plaintiff, Lawrence Bize, Sr., at the time of the underlying settlement as reflected in Paragraphs IV, V, and VI of the Third Amended Petition for Damages And Trial By Jury. This matter is remanded for the trial court's specific consideration of the Exception of Peremption on that sole issue and for further proceedings if appropriate. In all other respects, the judgment sustaining the Exception of Peremption is maintained. The trial court's judgment sustaining the Exception of Res Judicata is reversed and that exception is denied.

One-half of the costs of this proceeding are assessed to the plaintiffs—appellants, Larry Bize, Sr. and Michele R. Bize. The remaining one-half of the costs are assessed to the defendants—appellees, Malcolm Larvadain and Edward Larvadain, III.

**JUDGMENT DENYING MOTION TO OPPOSE SETTING OF BOND FOR SECURITY OF COSTS, RULE TO SHOW CAUSE & DECLARE STATUTE UNCONSTITUTIONAL AFFIRMED.**

**JUDGMENT SUSTAINING THE EXCEPTION OF PEREMPTION AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

**JUDGMENT SUSTAINING THE EXCEPTION OF RES JUDICATA REVERSED. EXCEPTION OF RES JUDICATA DENIED.**

# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 18-394

**LARRY BIZE, SR. AND MICHELLE R. BIZE**

**VERSUS**

**MALCOLM LARVADAIN, ET AL.**

**COOKS, J., concurs in part and dissents in part.**

I agree with the majority's reversal of the trial court's ruling sustaining the exception of res judicata and the reversal of the trial court's ruling sustaining the exception of peremption as to the allegation of malpractice related to Plaintiff Lawrence Bize's mental capacity at the time of the underlying settlement. However, I disagree with the majority's affirming the trial court's denial of the motion to oppose the setting of bond for security of costs. I believe the provisions of La.R.S. 13:4522, both on its face and as applied to Plaintiffs, violates Plaintiffs constitutional rights under La.Const. art. 1 §§ 3 and 22, and U.S. Const. amends. I and XIV. The Louisiana Constitution "mandates equal protection of the laws," *Butler v. Flint Goodrich Hosp. of Dillard Univ.*, 92-559 (La. 10/19/92), 607 So.2d 517, 518, and La.Const. art. I, Section 3, provides that "[a]ll courts shall be open, and *every person shall have an adequate remedy by due process of law and justice,* administered *without* denial, *partiality*, or unreasonable delay, for injury to him in his person, property, reputation, or other rights." La.Const. art. I, § 22. Under the United States Constitution all persons are guaranteed equal protection of the law, a right made applicable to the states through the fourteenth amendment to the United States Constitution. Louisiana Revised Statute 13:4522 does not treat all litigants the same

1

but instead carves out certain exceptions to its requirement that litigants may be compelled to deposit security for costs before proceeding with their claims in court:

> The defendant before pleading in all cases may by motion demand and require the plaintiff or intervenor to give security for the cost in such case, and on failure to do so within the time fixed by the court such suit or intervention, as the case may be, shall be dismissed without prejudice. **This section shall not apply to the Parish of Orleans** and **to cases brought in forma pauperis**, nor **to the state or any political subdivision thereof.**

The phrase "Parish of Orleans" must refer to the people of the parish because the statute exempts the State and its political subdivisions which would include the Orleans Parish and the City of New Orleans governing bodies. Thus, under the express provisions of this statute, all residents of Orleans Parish are exempt from the requirement to post security in order to proceed with their day in court. Also exempt are those litigants who are so financially challenged that they meet the requirements for pauper status. Additionally, the State and all its political subdivisions cannot be compelled to post bond in order to proceed in court. But the unfortunate litigant, such as Plaintiffs herein, who make up the fast-growing segment of our society sometimes referred to as "the working poor," or in this case the *retired* poor, are singled out to provide large sums of money, in this case, $25,000, to insure that should their claim against Defendants fail, court costs and other costs that may be recoverable by the party victorious will be paid. The State and Defendants posit that litigants compelled to provide surety for costs can put up *unmortgaged* property, *if* they own any, or obtain a surety bond from a bonding company, *if* they can financially qualify. But all too often these options are not available to litigants and in this case, Plaintiffs attempted to post a property bond, but it was refused by the trial court. Here, Mr. Bize is a retired postal worker and Mrs. Bize is a retired commissary worker. They assert this surety requirement works an unnecessary, substantial financial hardship on them.

2

It is easy to discern the basis for exempting the pauper from such a requirement who would otherwise have no access to justice. It is also not difficult to understand the wisdom of exempting the State and its political subdivisions from the requirement to post surety as a prerequisite for proceeding to enforce claims on behalf of the general citizenry. But, any justification for exempting the good people of Orleans Parish from this requirement totally eludes me. Is it because that parish contains a disproportionate number of lower economic citizens or is it just that they had more capable representation in the legislature when this law was enacted? I am also at a loss to reconcile any basis to treat the citizenry different than governmental entities whenever either is a plaintiff in a civil matter. But the reason for such glaring disparate treatment is not for me or these Plaintiffs to figure out, it is the burden of the State to justify such disparity, if they can, once this constitutional challenge is before the court. I do not believe the State met that challenge in this case nor can I imagine how such disparity can be justified. The Louisiana State Supreme Court has rejected such disparate treatment in the past on the basis of both La.Const. art. I § 3 and § 22. In *Detraz v. Fontanna*, 416 So.2d 1291 (La. 1982) the supreme court found La.R.S. 42:261E, as it read at that time, unconstitutional as violative of both Louisiana's constitutional guarantee of equal protection and equal access to the courts. That statute provided:

> Any party who files suit against any duly elected or appointed public official of this state of or any of its agencies or political subdivisions for any matter arising out of the performance of the duties of his office other than matters pertaining to the collection and payment of taxes and those cases where the plaintiff is seeking to compel the defendant to comply with and apply the laws of this state relative to the registration of voters, and who is unsuccessful in his demands, shall be liable to said public official for all attorneys fees incurred by said public official in the defense of said lawsuit or lawsuits, which attorneys fees shall be fixed by the court.
>
> ***The defendant public official shall have the right, by rule, to require the plaintiff to furnish bond as in the case of bond for costs,***

3

***to cover such attorneys fees before proceeding with the trial of said cause***.

*Id*. at 1292.

In *Detraz*, the supreme court discussed the ways in which the jurisprudence had developed numerous exceptions to the requirement, but in its final analysis the court determined that even those exceptions could not save the statute. The supreme court held the statute unconstitutional as violative of both state and federal constitutional guarantees of equal protection, and Louisiana's constitutionally mandated equal access to our courts of justice. The supreme court explained its holding based on equal protection as follows:

> The state and federal constitutional guarantees of equal protection mandate that *state laws affect alike all persons and interests similarly situated*. U.S.Const.Amend. XIV; La.Const. art. 1, § 3 (1974). *The effect of the bond requirement is to create two classes of litigants indistinguishable from each other except that one is a private citizen and the other is an elected or appointed public official.* As a result of this distinction the class composed of public officials is entitled to demand that a bond for attorney's fees be furnished before the litigation may proceed; no corresponding privilege is afforded members of the other class. Litigants generally are required to pay their own attorney's fees in Louisiana. Failure to post the bond will result in dismissal of the lawsuit. This statutory scheme creates a classification which substantially burdens the right of some persons to be compensated for injuries suffered by them while not placing such a burden on other individuals. Such classifications are permissible only if they are:
>
> > ... reasonable, not arbitrary, and ... rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.... *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed.2d 989, 990-991 (1920). *Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225, 229 (1971); *Dandridge v. Williams*, 397 U.S. 471, 520-522, 90 S.Ct. 1153, 1179-1180, 25 L.Ed.2d 491, 522-523 (1970) (Marshall, J., dissenting).
>
> It is argued that the bond requirement is a justifiable means to deter frivolous suits instituted against public officials for harassment. No support for the suggestion that suits are brought against public officials for harassment with greater frequency than suits against other defendants has been presented in brief or in argument.

4

A similar statute was invalidated in *Sheffield v. State*, 92 Wash.2d 807, 601 P.2d 163 (1979), on an equal protection ground. In that case, the court summarily struck down a provision which entailed the filing of a surety bond contemporaneously with institution of suit against the state, relying on *Hunter v. North Mason High School*, 85 Wash.2d 810, 539 P.2d 845 (1975). *Hunter* dealt with a "nonclaim" statute which required notice of claims against governmental entities to be given within 120 days from the date the claim arose. The court held that, *even under minimal scrutiny*, the statute bore no reasonable relation to its asserted purposes-it unjustifiably discriminated against persons with claims against the government in violation of the equal protection clause of the Fourteenth Amendment.

> ... This prerequisite to tort recovery has no counterpart in actions between private parties. The statutes thus create two classes of tortfeasors, governmental and nongovernmental, and grant the one a procedural advantage not available to the other. Concomitantly they produce two classes of tort victims and place a substantial burden on the right to bring an action of one of them. *Hunter v. North Mason High School*, supra, 539 P.2d at 847.

> *In the case before us, the instant statute also divides tortfeasors into two classes: governmental tortfeasors and private tortfeasors*. Simultaneously two classes of victims are created: victims of governmental tortfeasors and victims of private tortfeasors. Only the first class of victims must suffer the additional burden of a bond for attorney's fees. No reasonable justification for this disparate treatment has been supplied. The statute violates the equal protection clauses of the state and federal constitutions.

*Detraz*, 416 So. 2d at 1295–96 (emphasis added).

Likewise, the current challenged statute divides litigants into three classes: governmental, non-governmental, and paupers. No justifiable reason is advanced by the state here to justify this disparate treatment. Additionally, the state supreme court in *Detraz* also found the challenged statute in that case violative of due process and access to the courts:

> The challenged provision is also defective because *it deprives the plaintiff of due process and denies open access to the courts*. U.S.Const.Amends. V, XIV; La.Const. art. 1 §§ 2, 22 (1974). In *Beaudreau v. Superior Court of Los Angeles County*, 14 Cal.3d 448, 121 Cal.Rptr. 585, 535 P.2d 713 (1975), a cost bond statute was struck down on the ground that it constituted a taking of property without a

5

prior hearing in violation of the due process clause of the Fourteenth Amendment. The court noted that the purpose of the challenged sections was to protect public entities and public employees against unmeritorious litigation. As in this case, decisional law allowed the plaintiff an opportunity to qualify to proceed in forma pauperis. Under the statute, the court reasoned that a taking occurs if the plaintiff refuses to post the bond and thereby relinquishes his property interest in the form of his claim against the public entity or employee. Conversely, should the plaintiff secure his undertaking from a corporate entity, he will forfeit the nonrefundable premium; if money is deposited in court, the plaintiff is deprived of its use during pendency of the suit. The court concluded that due process *mandates a hearing before the undertaking is posted to* **inquire into the merits of the litigation and the reasonableness of the amount of the bond in light of the defendant's probable expenses.**

In *Williams v. London*, 370 So.2d 518, 521 (La.1979), Judge Tate observed in a concurring opinion that the constitutionality of R.S. 42:261 E was not before the court. Citing *Beaudreau v. Superior Court of Los Angeles County*, [14 Cal.3d 448, 121 Cal.Rpt. 585, 535 P.2d 713 (1975)] supra, he stated that the Louisiana statute is invalid for reasons similar to those used to invalidate the California statute:

> *... a requirement that a citizen furnish a bond and be liable for attorney's fees when he sues a public official, whereas an official suing a citizen need not file bond or be liable for attorney's fees, is in my opinion unconstitutional. For one reason, the statute offends Art. 1, Section 22, La.Const. of 1974: "All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights."*

In *Boddie v. Connecticut*, 401 U.S. 371, 374-375, 91 S.Ct. 780, 784, 787, 28 L.Ed.2d 113, 117, 120 (1971), the court declared that a Connecticut statute which required prepayment of court fees and costs violated due process because it precluded access to the courts to those plaintiffs who could not afford to pay the costs. The court stated:

> Perhaps no characteristic of an organized and cohesive society is more fundamental than its erection and enforcement of a system of rules defining the various rights and duties of its members, enabling them to govern their affairs and definitively settle their differences in an orderly, predictable manner....
>
> Just as a generally valid notice procedure may fail to satisfy due process because of the circumstances of the defendant, *so too a cost requirement, valid on its face, may offend due process because it operates to foreclose a*

6

> *particular party's opportunity to be heard. The State's obligations under the Fourteenth Amendment are not simply generalized ones; rather, the State owes to each individual that process which, in light of the values of a free society, can be characterized as due.*
>
> The present statute unconstitutionally denies litigants due process and open access to Louisiana courts.

*Id*. at. 1296–97 (emphasis added).

Under this rationale I believe the statute challenged in this proceeding is constitutionally defective on its face and as applied to Plaintiffs. I note here too, there is no requirement that a hearing be had to "***inquire into the merits of the litigation***" *Id.* Indeed, the record shows that there was absolutely no inquiry made as to the merits of Plaintiffs' claims. Though there is some requirement under this statute to inquire as to "***the reasonableness of the amount of the bond in light of the defendant's probable expenses***," *Id***.,** the only inquiry made here as to the reasonableness of the amount of bond set by the trial court was based on Defendants' representations regarding the *anticipated* need for, and *anticipated* concomitant costs of, experts. Defendants have made no showing that Plaintiffs' lawsuit for legal malpractice is frivolous or at least that Plaintiffs cannot prevail. Nor has there been any showing by Defendants that Plaintiffs would be unable to pay whatever costs are incurred and ultimately assessed against them should they lose. Further, I am not in the least persuaded by the suggestion that Plaintiffs might have some ability to post this bond because they received $50,000 in settlement of their claim which is now the subject of litigation. It is not hard to imagine, especially given Plaintiff's allegations, that this sum was woefully inadequate to even meet Plaintiff's out-of-pocket medical costs much less to assume that any portion of that amount is readily available for posting bond. And I am inclined to believe the attorneys did not waive their substantial percentage of attorney's fees. The Plaintiffs present a serious claim

for legal malpractice which they have already shown appears to have merit and a reasonable chance at success. Under the rationale articulated in *Detraz*, the challenged statute in this case cannot withstand constitutional scrutiny.

The Louisiana State Supreme Court in *Sibley v. Bd. of Sup'rs of La. State Univ.*, 477 So.2d 1094, 1105, (La.1985) expressly held that "the federal three level system is an inappropriate model for equal protection analysis under the Louisiana Constitution." Instead, the state supreme court declared:

> Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) *When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest.* With the adoption of these guarantees Louisiana moved from a position of having no equal protection clause to that of having three provisions going beyond the decisional law construing the Fourteenth Amendment.
>
> The Declaration of Rights committee of the 1973 Constitutional Convention proposed an article raising the threshold of equal protection by prohibiting discrimination because "of birth, race, age, sex, social origin, physical condition, or political or religious ideas." As explained by the committee spokesman, because the federal courts had failed to afford real or substantial protection by applying the Fourteenth Amendment to legislation based on all of these classifications, the proposed article would require judicial examination when any such classification was challenged and would assign to the State the burden of showing that the classification reasonably furthers a legitimate purpose. *A person challenging a legislative classification based on any other grounds would have to show that the law was unreasonable or that it did not further any appropriate state interest.*

*Id.* at 1107–08 (emphasis added).

The state supreme court has repeatedly held that Louisiana's "constitutional guarantee of equal protection mandates that state laws *affect alike all persons and interests similarly situated. Beauclaire v. Greenhouse,* 05–0765, p. 5 (La.2/22/06),

8

922 So.2d 501, 505." *City of New Orleans v. Louisiana Assessors' Ret. & Relief Fund*, 05-2548 p. 36 (La. 10/1/07), 986 So. 2d 1, 26, *on rehg* (1/7/08) (emphasis added). Additionally, the supreme court has explained that "[t]his guarantee does not remove from the legislature all power of classification, or require absolute equality or precisely equal advantages; the law merely *requires equal application in similar circumstances*." *Id.* (emphasis added).

In *City of New Orleans*, the supreme court rejected the city's constitutional challenge to La.R.S. 11:1481 based on its assertion that New Orleans' taxpayers were being treated differently from all other taxpayers in the state, and that such disparate treatment violated equal protection. That law required "all tax recipient agencies of ad valorem taxes . . . to furnish the legislative auditor the authorizing ordinances or resolutions, the tax rolls, and the tax rate to be applied to the assessed values for ad valorum tax purposes no later than June first of every year." La.R.S. 11:1481(1)(a) (ii)(aa). New Orleans asserted it was being treated differently but it failed to provide proof of that allegation. In fact, the supreme court's basis for rejecting the city's challenge to the statute was its finding that the statute had been amended and now provided the same treatment to all governing bodies including the City of New Orleans. Thus, there was no longer a singling out of New Orleans. Implicit in this ruling, and explicit in the court's rationale, is the notion that if the contested law had indeed continued to single out New Orleans for different treatment the statute would not pass constitutional scrutiny. Our courts have also addressed this type of equal protection challenge in the cases concerning the constitutionality of Louisiana's cap on medical malpractice recovery. In that line of cases the courts have engaged in important discussions regarding constitutional notions of equal protection embodied in our state constitution. In *Oliver v. Magnolia Clinic*, 09-439 (La. App. 3 Cir. 8/31/11), 71 So. 3d 1170, *writ granted*, 11-2132 (La. 11/14/11), 75

9

So. 3d 440, and *writ granted*, 11-2139 (La. 11/14/11), 75 So. 3d 440, and *writ granted*, 11-2142 (La. 11/14/11), 75 So. 3d 441, and *aff'd in part, rev'd in part*, 11-2132 (La. 3/13/12), 85 So. 3d 39, this court addressed the disparate treatment of a suspect class and whether such disparity could survive constitutional scrutiny. In *Oliver*, as in this case according to the majority, the court faced the question of whether the plaintiffs' constitutional claim was procedurally deficient. Relying on our holding in *Arrington v. Galen-Med, Inc.*, 04-1235 (La.App. 3 Cir. 7/6/07), 970 So.2d 540, *writs denied* 07-1614, 07-1628 (La.12/7/07), 969 So.2d 630 we rejected that challenge to the plaintiffs' constitutional attack:

> "[O]ur Code of Civil Procedure does not require a single procedure or type of proceeding for challenging or assailing the constitutionality of a statute." [*Vallo v. Gayle Oil Co., Inc.*, 94–1238 (La.11/30/94), 646 So.2d 859,] 864. The requirement that the unconstitutionality of a statute must be specially pled and the grounds for the claim particularized is a jurisprudential one designed to prompt a "contradictory hearing, wherein all parties will be afforded the opportunity to brief and argue the issue." *Arrington,* 947 So.2d at 726 (*quoting Vallo,* 646 So.2d at 865). The ultimate purpose of this rule, as explained by the supreme court, is that "[t]he record of the proceeding could then be reviewed to determine whether the party attacking the statute sustained his or her burden of proof, and *whether the trial court attempted to construe the statute so as to preserve its constitutionality.*" *Id.*

*Id*. 71 So. 3d at 1189–90.

Likewise, I believe Plaintiffs here have sufficiently preserved their constitutional claim and we are fully obliged to address it. In *Oliver* we faced the first type of equal protection analysis under Louisiana law, discriminatory treatment based on a suspect classification. Such a challenge places a heavier burden on the state to justify the challenged law. Here, we analyze disparate treatment based on the statute's exempting from its requirement for posting surety the whole of Orleans Parish, the State and all its political subdivisions and paupers. The state must show that it has a compelling interest in denying these Plaintiffs their constitutional right

of access to the courts and equal protection of the law. I believe the provision in the statute expressly exempting Orleans Parish, the State and its political subdivisions, and paupers, on its face, demonstrates the law unreasonably and arbitrarily creates classes of Louisiana residents treated differently. I can fathom no state interest that would justify treating all residents the same except those who happen to reside in Orleans Parish. Such a classification appears arbitrary on its face. This blatant disparate treatment embodied in the statute falls far short of Louisiana's constitutional mandate that all "state laws *affect alike all persons and interests similarly situated.*" *City of New* Orleans, 986 So. 2d at 26. This law, on its face, does not affect all Louisiana residents who find themselves plaintiffs in law suits. I can discern no difference between a plaintiff who is a resident of Orleans Parish and one who resides anywhere else in this state. Likewise, the State has advanced no reasonable basis to support its preferential treatment to the State and its political subdivisions. As to the treatment of paupers, I believe the jurisprudence and common sense require no further comment. Clearly, the law as written does not affect all citizens of Louisiana the same and is, for the reasons stated, constitutionally infirm as applied to Plaintiffs. I therefore respectfully dissent from this portion of the majority opinion.